**Eric Ovio ENGLUND, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1340–95.**

Court of Criminal Appeals of Texas, En Banc.

April 30, 1997.

Stanley G. McGee, Angleton, for appellant.

Jerome Aldrick, District Attorney, Angleton, John S. Klassen, Asst. Atty. Gen. and Asst. Dist. Atty. Pro Tem., Matthew Paul, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellant was convicted of driving while intoxicated. The trial court sentenced him to ninety days of confinement, probated for twelve months, and assessed a $1200 fine. The State moved to revoke appellant's probation for several reasons based on a DWI offense the State claimed appellant committed in Cameron County after he had been placed on probation for the present offense. At the revocation hearing the State introduced a facsimile transmission of a certified copy of the judgment in the Cameron County DWI case. Over appellant's objection the trial court admitted the document into evidence. The trial court revoked appellant's probation. The Houston First Court of Appeals affirmed and held that the trial court did not err in admitting the exhibit into evidence. *Englund v. State,* 907 S.W.2d 937 (Tex.App. -Houston [1st] 1995)(en banc opinion on motion for rehearing). We granted

1. As reasons for review Appellant asserts the Court of Appeals decided an important question of state law that has not been, but should be, settled by this Court and the Justices of the Court of Appeals disagreed upon a material question of

appellant's petition for discretionary review, which contends, "[T]he Court of Appeals erred in holding that a facsimile transmission (fax) of a certified copy of a judgment is admissible in evidence."[1]

The lead opinion in the Court of Appeals described the exhibit as follows:

"The first page included a 'fax transmittal memo' showing that five pages were transmitted from the Cameron County Clerk's Office to the Brazoria County District Attorney's Office. The top of each page included a machine notation showing the date, time, source telephone number, and source ('CAMERON CO CLERK') of transmittal. A reproduction of the county clerk's seal, attestation, and signature appears at the bottom right side of each page.

\* \* \* \* \* \*

"[E]ach page of the Cameron County judgment contains a round seal stating 'County Court at Law No. 2 of Cameron County, Texas.' The seal may have originally been raised, and appears to have been darkened for photocopying purposes. This round seal was placed over a stamp that states:

A CERTIFIED COPY

Attest: *June 8th, 1994.*

JOE G. RIVERA, County Clerk

Cameron County, Texas

By *Irene Dlz* Deputy

"The underlined portions represent blank spaces that were filled by handwritten notations." *Id.* at 938, 939.

The three opinions in the Court of Appeals offered three different theories, two supporting admissibility of the exhibit and one supporting its inadmissibility. The lead opinion, authored by Justice Mirabal and joined by two Justices, observed that the controlling rules were Tex.R.Crim.Evid. 901(a)[2],

law necessary to the decision. See Tex.R.App. Pro. 200(c)(2), (5).

2. Rule 901(a) provides, "The requirement of authentication or identification as a condition pre-

901(b)(7)[3], 1001(3)[4] and (4)[5], 1003[6], and 1005[7]. Justice Mirabal stated that there was a certified copy, so that Tex.R.Crim.Evid. 902[8] and 1005 were complied with. *Id.* at 939. She concluded that the certified copy of the judgment was an "original" under Tex. R.Crim.Evid. 1001(3) and the fax copy was a "duplicate" under Rule 1001(4). *Ibid.* Justice Mirabal's lead opinion determined that under Rule 1003 the trial court did not abuse its discretion in admitting the fax into evidence as a duplicate of the original certified copy. *Ibid.*

The concurring opinion, authored by Justice Cohen and joined by one Justice, agreed with the lead opinion that the fax was admissible as a duplicate. *Id.* at 939 (Cohen, J., concurring). According to Justice Cohen the

fax also was admissible as an "original" certified copy under Rules 1001 and 1002[9] because it was a counterpart intended by the Cameron County Clerk to be received as a certified copy and to have the same effect as the original judgment and sentence. *Id.* at 939–40.

The dissenting opinion, authored by Justice Taft and joined by the Chief Justice and two Justices, disagreed that the faxed certified copy of the judgment was an "original." *Id.* at 941 (Taft, J., dissenting). Justice Taft reasoned that Rule 1005 establishes a particular hierarchy of secondary evidence, that under the rule the State failed to show reasonable diligence in trying to secure a certified copy, or a witness to compare a copy to the original, and that the State should not

---

cedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

3. Rule 901(b)(7) provides:

"By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule: ... Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."

4. Rule 1001(3) provides:

"An 'original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An 'original' of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.' "

5. Rule 1001(4) provides:

"A 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduce the original."

6. Rule 1003 provides, "A duplicate is admissible to the same extent as an original unless (1) a question is raised as to the authenticity of the original or (2) in the circumstances it would be

unfair to admit the duplicate in lieu of the original."

7. Rule 1005 provides:

"The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given."

8. Rule 902(1), (4) provides:

"Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

"(1) A document bearing a seal purporting to be that of the United States, or of any state, district, ... or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

...

"(4) A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraphs (1), (2), or (3) of this rule or complying with any statute or court rule prescribed pursuant to statutory authority."

9. Rule 1002 provides, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law."

have been allowed to resort to the faxed document as an alternative method of proving the contents of the judgment. *Id.* at 942.

Appellant agrees with the analysis in Justice Taft's dissenting opinion. Appellant argues that under Rule 901(b)(7) the State was required to introduce evidence sufficient to support a finding that the faxed copy of the judgment was authorized by law to be recorded or filed in a public office or that it was a public record. Appellant claims the State produced no evidence to support the authentication or certification of the faxed copy of the judgment other than by a copy of the seal. Appellant asserts that Rule 1005 sets out a particular hierarchy of secondary evidence and that other evidence of the contents of the judgment was not allowed unless the State could not obtain through due diligence a certified copy of the judgment or a witness who could testify that the copy was correct after comparing it with the original. Appellant contends the State did not demonstrate due diligence under Rule 1005 so as to use other evidence such as the faxed copy of the judgment. Appellant maintains that the faxed copy was not an "original" for purposes of Article X of the Texas Rules of Criminal Evidence.

The State asserts this case involves two concerns: authenticity and "best evidence." The State contends that there is no real authentication dispute because there is a seal and certification by a deputy clerk. According to the State, Appellant's arguments maintains that the fax was a counterpart intended to have the same effect as the original certified copy of the judgment, so the fax was another "original" certified copy and was properly admitted. The State also argues that the fax was admissible as a "duplicate." Finally, the State asserts that admitting the fax into evidence was in keeping with Rule 102.[10]

We agree with the State that the issue involved in this case concerns Article X rather than Article IX of the Texas Rules of Criminal Evidence. The question is whether a fax of the certified copy was admissible in lieu of the certified copy that was the source document for the facsimile transmission. This question implicates Article X.

Article X addresses what was the common law "best evidence" rule. Under Rule 1002, when a party seeks to prove the contents of a writing, the original writing is required except as otherwise provided by the rules or by law. In the present case the State sought to prove through a judgment that appellant had been convicted of an offense. To prove the contents of the writing, i.e., the judgment, the State had to prove it with the original judgment, unless the rules or law provide otherwise. Rule 1005 provides otherwise. Under Rule 1005 the judgment, as an official record, or as a document authorized to be recorded or filed and actually recorded or filed, could have been proven by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original. There is no dispute that a deputy clerk prepared a certified copy of the judgment. The dispute concerns whether a copy of the document prepared by the clerk was admissible in lieu of the actual document prepared by the clerk. At this point in the analysis, however, the path through the rules is less than clear, as demonstrated by the different approaches found in the lead, concurring, and dissenting opinions of the Court of Appeals. Therefore, we now examine the purposes of the specific rules as well as the purposes and goals of the rules in general.

First, we review the rationale for the common-law rule on which Rule 1002 was based.

"Four somewhat overlapping reasons have been advanced to justify a rule preferring production of the original:

"(1) The nature of documents is often such that the exact words are "of more than average importance, particularly in the case of operative or dispositive instruments ... where a slight variation of words may mean a great difference in rights."

"(2) Secondary evidence—whether parol testimony or copies—is susceptible to both

---

**10.** Rule 102 provides, "These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

human and mechanical error. The rule, therefore, enhances the probability of accuracy.

"(3) The rule promotes the prevention of fraud because it allows the parties to examine documents for any defects or alterations, and it dampens any desire to color testimony as to the contents of documents, since any testimony is subject to immediate corroboration.

"(4) The appearance of the original may furnish information as to its authenticity and significance that may be lacking in a copy, such as handwriting, paper and the like. J. Weinstein, M. Berger & J. McLaughlin, *Weinstein's Evidence* ¶ 1002[02] (1995).[11]

Next, we consider the reasons for retaining some aspects of the common-law rule in modern evidentiary rules.

"In an earlier day, when discovery and other related procedures were strictly limited, the misleading named "best evidence rule" afforded substantial guarantees against inaccuracies and fraud by its insistence upon production of original documents. The great enlargement of the scope of discovery and related procedures in recent times has measurably reduced the need for the rule. Nevertheless, important areas of usefulness persist: discovery of documents outside the jurisdiction may require substantial outlay of time and money; the unanticipated document may not practically be discoverable; criminal cases have built-in limitations on discovery. Cleary and Strong, The Best Evidence Rule: An Evaluation in Context, 51 Iowa L.Rev. 825 (1966)." Fed.R.Evid. 1001 advisory committee's notes, *quoted in* 2 S. Goode, O. Wellborn & M. Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal* app. c, at 563 (Texas Practice 2d ed.1993).

As previously discussed in this opinion, Rule 1005 allows public records to be proven by a certified or compared copy.

"Public records call for somewhat different treatment. Removing them from their usual place of keeping would be attended by serious inconvenience to the public and to the custodian. As a consequence judicial decisions and statutes commonly hold that no explanation need be given for failure to produce the original of a public record. This blanket dispensation from producing or accounting for the original would open the door to the introduction of every kind of secondary evidence of contents of public records were it not for the preference given certified or compared copies. Recognition of degrees of secondary evidence in this situation is an appropriate *quid pro quo* for not applying the requirement of producing the original."

Fed.R.Evid. 1005 advisory committee's notes, *quoted in* 2 Goode, *supra*, app. c., at 568–69. Rule 1005 prefers copies over other evidence because copies are more reliable than testimonial proof. 5 C. Mueller & L. Kirkpatrick, *Federal Evidence* § 581, at 388 (2d ed.1994). Moreover, as the Advisory Committee's Note to Rule 1005 suggests, requiring the proponent to first attempt to secure a copy before allowing the proponent to resort to other evidence is justified by not requiring the proponent to produce the original. 5 *id.* For public records, Rule 1005 supplants Rules 1001–1004. 2 Goode, *supra*, § 1005.1, at 247. "The Rule creates a clear preference for certified or compared copies—thus departing from the general pattern of rejecting the concept of degrees of secondary evidence." Weinstein, *supra*, ¶ 1005[01], at 1005–3.

The question becomes whether a proponent must introduce the actual certified copy prepared by the clerk or whether a proponent may introduce a copy of the certified copy. To assist with the answer to that question, we examine the reasons for allowing duplicates into evidence under Rule 1003.

"When the federal rules were under consideration by the Congress, some concern was expressed that Rule 1003 unduly 'constricts' the best evidence rule, and that a party who had not had an opportunity to

11. Commentaries interpreting the Federal Rules of Evidence are instructive in our construction of similarly worded provisions in our own Rules. *Coffin v. State,* 885 S.W.2d 140, 147 n. 4 (Tex.Cr. App.1994). The pertinent portions of the Texas Rules of Criminal Evidence involved in this case are worded similarly to their counterparts in the Federal Rules of Evidence.

see the original could not, as a practical matter, challenge the accuracy of a duplicate. Professor Cleary, the Chief Reporter, responded to these concerns:

"With regard to proposed Rule 1003, you state that some concern was expressed that the rule constricts the best evidence rule.

"If by 'constricts' it is meant that the rule relaxes the common law insistence that the original in the strict sense be either produced or accounted for, then I agree that the rule has that effect. In fact that was the end in view in the drafting of the rule. The purpose of the best evidence rule has always been to secure the most reliable information in disputes over the contents of writings. In pre-discovery and pre-Xerox days the means used to attain that objective was a strong preference for the 'original.' With the advent of discovery and of xerography, the objective remains the same but the means of achieving it must be reexamined in the light of procedural and technological inventions. In my opinion the rule as drafted, taken in the light of present procedure and technology, is well designed to accomplish the purpose of the best evidence rule without wasting a lot of time over 'originals' which no one really needs. . . .

"The party complaining of lack of opportunity to see the original would, in my opinion, find in the exceptions of Rule 1003 any protection which the circumstances justified. One relevant circumstance might well be the source of the document. Thus an offer of duplicates of records of a disinterested third party, e.g. a bank, would be less likely to raise a question of genuineness or unfairness than would an offer of duplicates of a party's own records. The nature of the documents themselves and their apparent completeness or lack of it might also be factors. Other circumstances might in addition call for consid-

eration." 2 Goode, *supra*, Section 1003.1, at 236–37.

Duplicates are not absolutely admissible in place of originals.

"Two fears prevent use of duplicates as the equivalent of originals in all instances: inaccuracy in the reproduction process, and the possibility of fraud in allowing a copy or duplicate to be offered in evidence in place of the original. The first of these reasons is no longer of much significance since modern reproduction methods ensure accuracy. The second fear has some vitality; sometimes something of value can be gained from inspecting the original. The original may contain, and the copy may lack, such features of handwriting, paper, and the like as may afford the opponent valuable means of objecting to admissibility or arguing lack of probative force." *Weinstein, supra,* ¶ 1003[01], at 1003–7.

When circumstances assuage those fears, duplicates are admissible.

"When the only concern is with getting the words or other contents before the court with accuracy and precision, then a counterpart serves equally as well as the original, if the counterpart is the product of a method which insures accuracy and genuineness. By definition in Rule 1001(4), supra, a 'duplicate' possesses this character."

"Therefore, if no genuine issue exists as to authenticity and no other reason exists for requiring the original, a duplicate is admissible under the rule."

Fed.R.Evid. 1003 advisory committee's notes, *quoted in* 2 Goode, *supra,* app. c, at 566.[12]

The admissibility of duplicates should extend to copies of copies, as well.

"If an original is machine-copied, and the first copy is itself then copied so as to produce what might be called a 'second generation' copy two steps removed from the original, probably both copies qualify as 'duplicates' of the original, and the same

---

12. One facet of Federal Rule of Evidence 1003 differs from its counterpart in the Texas Rules of Criminal Evidence. The Texas rule provides a duplicate is admissible to the same extent as an original unless, inter alia, "a question is raised as to the authenticity of the original." The Federal rule allows for admissibility unless "a *genuine* question is raised" about the original's authenticity.

may be said of a third-generation copy produced from the second copy, and so on. Of course, something may be lost with each further step away from the original, and the problem of demonstrating that second- and third-generation copies trace their lineage back to the original is greater than the problem of establishing the provenance of a copy made directly from the original, but 'duplicate' status is warranted anyway. The same reasons to suppose that content is accurately reproduced in the first copy apply to the second and third copies. Only if the adversary can show that successive recopying may have so blurred the final product as to raise significant doubt on points of consequence should such 'duplicates' be excluded, and the question of admissibility should be resolved under FRE 1003." 5 Mueller, *supra*, Section 560, at 269–70.

Having reviewed commentary about some of the Article X Rules, we explore the role of Rule 102 and the Rules in general.

"The rule [102] cautions both the trial court and the state bar that the Rules should serve the cause of justice and not vice versa: courts are not to apply the Rules through adherence to wooden formalism at the expense of achieving a just result. Thus, flexibility in the Rules' application emerges as an interpretive consideration in attempting to achieve Rule 102's broad objectives. This approach accords with that of Federal Rule 102, which discourages undue attention to technicality. J. Wallace & C. Herasimchuck, *Article I: General Principles, Texas Rules of Evidence Handbook*, 30 Hous. L.Rev. 137, 144 (1993).

"Perhaps the most significant aspect of [Rule 102] is its recognition that the Federal Rules of Evidence do not and cannot deal in specific terms with all situations that may arise. In this context, Rule 102 negates the common law rule that statutes and rules in derogation of the common law are to be strictly construed. In its place Rule 102 directs that the court shall exercise its discretion to promote the ascertainment of truth in the proceeding at hand. In addition the rule encourages the exer-

cise of discretion in favor of promotion of growth and development of the law of evidence including reasoning by 'analogy to cover new or unanticipated situations.' M. Graham, *Handbook of Federal Evidence* Section 102.1, at 2–3 (3d ed.1991).

Rule 102 does not authorize trial courts to ignore rules of evidence, however.

"[C]ourts should not interpret Rule 102 as a plenary grant of discretion to the trial judge to forego the specific mandates of the Rules. Rather, the trial judge should initially follow the specific provisions of the Rules without reference to Rule 102. However, if the correct application of those provisions becomes so uncertain as to affect the course of the litigation in question, then a trial judge may properly refer to the seminal principles of Rule 102 in ruling on an evidentiary issue.... Thus, Rule 102 provides for judicial flexibility in novel evidentiary areas, not judicial rejection of established rules." Wallace, *supra*, at 145–46.

Professors Goode, Sharlot and Wellborn distilled Rule 102 as follows: "Since no set of procedural rules can be expected to cover by terms every situation that will arise in practice, a reasonable degree of flexibility in interpretation and application is essential. This is the mundane directive to be gleaned from between Rule 102's sonorous lines." 1 Goode, *supra*, Section 102.1, at 7.

As for how Rule 102 pertains to Article X generally, Judge Weinstein observed, "The best evidence rule is designed only to assist in the search for the truth, but being a relatively minor tool, it should never be applied so rigidly as to interfere with good trial sense. Doubts should be resolved in favor of admissibility; there should almost never be a reversal for failing to exclude." *Weinstein, supra*, ¶ 1001(1)[01], at 1001–17. "[W]hen there is any doubt, the secondary evidence should be admitted, leaving it to the [trier of fact] to determine probative force discounted by the failure to produce an original. Reversals for admission will be rare since there is almost never real prejudice that the opponent of the evidence cannot overcome." *Id.* ¶ 1002[02], at 1002–9.

Regarding Rule 1005 specifically, Judge Weinstein commented, "Despite the reliability of duplicates, Rule 1005 requires a copy of the type preferred by this Rule. It is now possible to get a reproduction that is identical to the original, using processes that eliminate the possibility of a human error in copying. Some flexibility is permitted by Rule 102 despite the apparent rigidity of Rule 1005." *Id.* ¶ 1005[01], at 1005–4.

Having surveyed commentary about the applicable corresponding Federal Rules of Evidence, we now review the circumstances surrounding the question of the exhibit's admissibility in this case and analyze how those circumstances relate to the goals and purposes of the rules. The Cameron County Clerk's office sent the exhibit to the Brazoria County District Attorney's office via a facsimile telecopier, which is one kind of copier that qualifies under Rule 1001(4). 5 Mueller, *supra,* Section 563, at 276. Professor Mueller described a facsimile telecopier's operation as follows: "When a copy of a writing is needed quickly at a distant point, a light scanner at the source can be used to translate an image of the original into electrical impulses which can be transmitted over conventional telephone circuits to the distant end, where it is decoded by a printer which produces a faithful copy." 5 *id.* at 277. The accuracy of the reproduction process that spawned the exhibit allayed fears about mechanical or human error.

The potential for fraud was minimized because the source of the facsimile transmission was the same source of the certified copy—the Cameron County Clerk's office. In a discussion of Rule 902(1), analogous to the potential for fraud in the present case, Professor Mueller commented:

"The idea behind Rule 902(1) is that forgery of official records, complete with signature and seal, seldom occurs. There are stiff criminal sanctions associated with forgery and misuse of public records and seals. Most such records are also distinctive enough in appearance to insure that efforts at forgery would have to be elaborate, and the seal provides additional difficulties for the would-be forger, although it

may be conceded that misuse of public forms and seals is not terribly difficult for public employees." 5 *id.* Section 539, at 155.

Although this was a criminal case, with attendant built-in limitations on discovery, the public record serving as the basis for the exhibit, or its lack of existence, would have been discoverable. The motion to revoke alleged appellant committed an offense on a particular date in Cameron County. Investigation of the allegation, including a search of Cameron County records, would have enabled counsel to discover that there was or was not a judgment against appellant stemming from an offense committed on the date alleged in the motion to revoke. We are not suggesting that counsel had any burden to prove such a judgment did not exist; we simply observe that the public record was a writing whose existence and content were readily discoverable so that appellant could have raised a question about fraud or the accuracy of the faxed copy of the certified copy.

The trial court was called upon to determine admissibility of evidence in a novel situation. Under the circumstances in this case, the exclusion of the exhibit was not compelled by any purpose or goal of the Rules found in Article X. The only theory of inadmissibility rested upon a wooden application of Rule 1005 requiring the actual certified copy to be offered into evidence without regard to the indicia of authenticity present in the circumstances surrounding the faxed copy of the certified copy. On the contrary, the purposes and goals of Article X Rules and Rule 102 support the trial court's admission of the exhibit into evidence. The Rules are flexible enough to have allowed for an interpretation leading to the conclusion that the exhibit was admissible under Rules 1005 and 1003 without ignoring or mangling the Rules. The Court of Appeals did not err in holding the trial court did not abuse its discretion in admitting the exhibit into evidence as a duplicate of a certified copy under Rules 1005 and 1003.[13] Accordingly, the judgment of the Court of Appeals is affirmed.

---

**13.** We do not suggest that a copy of a certified     copy of a public record obtained by facsimile

MANSFIELD, Judge, dissenting.

Because I believe that a fax copy is neither an original nor a duplicate of an original as contemplated under the Texas Rules of Criminal Evidence, I respectfully dissent.

Texas Rule of Criminal Evidence 901(a) provides the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a) is a broad rule that merely requires that certain evidence, to be admissible, must be authenticated by the proponent.

The evidence at issue, the judgment of conviction from Cameron County, if properly authenticated, would be a public record or report. Rule 901(b)(7) provides the authentication requirements of Rule 901(a) are met with respect to public reports or records if there is "evidence that the writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."

Rule 902 provides for self-authentication of domestic public documents, thereby obviating the need for the proponent of the documents' admissibility to produce extrinsic evidence as to their authenticity, if:

(1) in the case of a document under seal, there is a signature purporting to be an attestation or execution; and

(2) in the case of a document not under seal, a public officer having a seal and having official duties in the political subdivision or district of the person who signed the document certifies un-

der seal the signer had official capacity to sign the document and that the signature is genuine.

In the present case, a certified copy of appellant's judgment of conviction for driving while intoxicated was prepared in Cameron County. Each page of the Cameron County judgment contains a seal stating, "County Court at Law No. 2 of Cameron County, Texas." The seal is placed over a stamp which states: "A certified copy, Attest: June 8, 1994, Joe G. Rivera, County Clerk, Cameron County, Texas. By Irene Dlz, Deputy." There is no question the certified copy fully complies with the self-authentication requirements of Rule 902(1) and would be admissible as a public record under Rule 1005. Had the State offered the certified copy at the revocation proceeding it would have been admissible, as conceded by the parties, as a copy of a public record under Rule 1005.[1]

The issue before us is whether the fax copy of the Cameron County judgment is a "duplicate" of the certified copy under Rule 1001(4). Under Rule 1003, "[a] duplicate is admissible to the same extent as an original unless (1) a question is raised as to the authenticity of the original, or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

The fax copy is not admissible under Rule 1005 because it is not certified in accordance with Rule 902. While the fax copy does have what appears to be a copy of a seal as well as a copy of an attesting signature, the State did not offer any evidence as to the reliability or veracity of same. Rules 902, 1002, and 1005, in my opinion, were intended to allow the introduction into evidence of public rec-

---

transmission will always be admissible. If a party raises an objection the trial court must exercise discretion under Rule 1003 in determining whether a question is raised as to the authenticity of the original or whether in the circumstances it would be unfair to admit the duplicate in lieu of the original. Moreover, we do not suggest that a party may manipulate Rules 1003, 1004, and 1005 and offer other evidence of the contents of a public record, other than a duplicate of a certified copy, without first showing that a certified or compared copy could not be obtained by the exercise of reasonable diligence.

Because we affirm under the theory of admissibility utilizing Rule 1003, we do not address the alternative theory of admissibility offered in the concurring opinion below. However, we observe that under either theory of admissibility, the practical effect of the Cameron County Clerk's office facsimile transmission of the certified copy was that the end product was, at least in essence, a certified copy.

1. The certified copy, having met the authentication requirements under Rule 902, would also be admissible as a duplicate under Rules 1001(4) and 1003.

ords that meet at least one of the following criteria:

(1) the original itself, which, by definition, is self-authenticating;

(2) a certified copy of the original, which, under Rules 1001(3), 1005, and 902, is *de facto* treated as an original.

A fax copy may well be a "duplicate" under Rule 1001(4), but it fails to meet the requirements of Rule 1005. The record below does not reveal the State introduced any testimony by a witness who compared the fax copy to the original (or to the certified copy) and then testified the fax copy was a correct and accurate copy of same. Second, only an *original* attestation/certification meets the authentication requirements of Rule 902 with respect to a copy. What purports to be authentication of the fax copy in the present case is itself, only a copy of what purports to be an authentication.[2]

In my opinion, the admission of facsimile copies *without* an original attestation/certification is not permitted by the Texas Rules of Criminal Evidence, as currently written.[3]

I respectfully dissent.

BAIRD, OVERSTREET and MEYERS, JJ., join.

---

**2.** In effect, a fax copy, absent an *original* attestation complying with Rule 902, is a *copy of a copy*. As such, it is not admissible under Rule 1005.

**3.** This Court may amend the Rules, pursuant to authority granted it by Acts 1985, 69th Leg.

Chap. 685, p. 5136, Sections 5–9, to provide for the admission of facsimile copies. To do so by any other method would, in my opinion, be an improper exercise of our authority.