**Affirm and Opinion Filed July 29, 2013**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-12-00909-CR

### ERIC LYLE WILLIAMS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 422nd Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 29823-422**

## MEMORANDUM OPINION
Before Justices FitzGerald, Francis, and Lewis
Opinion by Justice Francis

A jury convicted former Kaufman County Justice of the Peace Eric Lyle Williams of burglary of a building and theft by a public servant of property, and the trial court assessed punishment at two years in state jail, probated for two years, and a $2,500 in each case. In two issues, appellant complains the trial court erred by (1) admitting video evidence of him taking three computer monitors from the Kaufman County sub-courthouse and (2) allowing the jurors to take notes and use them during deliberations. We conclude neither issue has merit and affirm the trial court's judgments.

Lori Friemel testified she worked for Kaufman County in the Information Technology department. The department was located in the sub-courthouse, which also housed the office of

the Precinct 1 justice of the peace. Appellant had served as the justice of the peace since January 2011. When Friemel left work on Friday, May 13, 2011, there were nine new computer monitors, still in their boxes, in the IT workroom. When Friemel returned to work the following Monday, three of the monitors were missing. Friemel checked with her co-workers, but none of them knew where the monitors were. To determine what happened, Friemel logged into the building's security system to see if someone came into the office and moved the items. Friemel explained surveillance cameras were placed throughout the sub-courthouse. The cameras were all motion-activated, and a digital video recorder maintained the images for thirty days; on the thirty-first day, the system would overwrite day one. A separate server was used for the JP office security cameras, but it was not operational at the time.

Friemel said she began looking at video from the time she left the office the previous Friday. The video of Sunday, May 15, showed appellant entering the sub-courthouse, going into the IT department, and leaving with three boxed Dell computer monitors. Friemel then looked back as far the system would allow her, April 16, and found other images of appellant in the IT office on Sundays when it was closed. Other than the cleaning people, Friemel said appellant was the only person in the building on the videos on those days.

Friemel contacted her boss, IT Director George York, who told her to make copies of the video. Friemel backed up the entire video on an external hard drive and also separately pulled the segments from the DVR depicting appellant. Friemel testified she did not alter or change any of the images in the process. The only alteration made, she said, was to give the file a name, such as "entering entrance hallway and a date," so it would be easier to "find what was what." Using a blueprint of the building, Friemel identified the locations of all the cameras and explained the pathways to get around the building without having to use a card access.

York turned the video over to the sheriff's office for investigation and said it never occurred to him to simply contact appellant and ask him what he was doing, given that appellant was depicted "snooping around those hallways every Sunday for a month." Captain Ernesto Zepeda of the Kaufman County Sheriff's Office said he received a jump drive containing two videos. Zepeda said he viewed the videos and "couldn't believe" what he saw: "Judge Williams walk out of the IT department with some computer monitors." Zepeda said the videos seemed to show a "pattern" of appellant coming in and going out of the IT department on Sundays, between 7 a.m. and 2 p.m. Zepeda also met with Friemel, who told him she had no record of appellant's office having any monitor problems. She also told Zepeda that appellant knew the process for purchasing items, because he had previously ordered a laptop.

On May 24, nine days after appellant was recorded taking the monitors, sheriff's deputies arrested him and recovered two of the missing monitors. One was located on appellant's office desk and the other was found covered with clothing in the back seat of appellant's truck. The third monitor was never recovered.

Immediately following his arrest, appellant was interviewed by sheriff's deputies. The interview was recorded. In the interview, the deputies told appellant he was seen on surveillance cameras taking three computer monitors from the IT department. Appellant admitted taking the two monitors found on his desk and in his truck; however, he said he did not remember taking a third. At another point when asked if he believed he took only two monitors, appellant said he was "trying to refresh" his memory and then said "unless I took one back" that was not the "right kind" or was not "an upgrade." The deputy asked, "Did that happen?" Appellant responded he did not remember, adding that he needed to "sit down and think for a little while." Minutes later,

3

when the subject of the third monitor came up again, appellant asked the deputies whether there was anything that "shows me bringing one back because it didn't fit." The deputies told him no.

Appellant was asked if he took anything else from IT, and appellant said he had taken memory chips and put them in the computers of his staff. He told the deputies that since he had taken office, "everything I've had to do to improve my office, I've had to do myself." He said he had had to "scrounge" for post-it notes and pens, but admitted he had not requested monitors. Appellant suggested he believed it was appropriate to walk into the IT department after hours and take what he needed, saying "some businesses do that." He explained that he took the items on Sundays because that is "just when I'm there." Appellant said he had been in the IT office about ten times on weekends in the previous five months, and had taken items "maybe" four times. He also talked about a video magistrate system that he wanted to put into place and said he had intended to put the monitor found in his truck in the arraignment room at the jail. He acknowledged he had an IT budget and had made purchases out of it before. He also told the deputies that once he took the monitors, he did not notify IT, purchasing, or any public official.

The surveillance video and twenty-two photographs extracted from the video were admitted as evidence as well as the recording of appellant's interview by deputies. Other evidence showed that after appellant was charged with the two cases, he gave a letter to the county judge asking him to "determine if things can be de-escalated." In the letter, appellant "accept[ed] responsibility for what I did" but said "it was not a criminal offense." Appellant said he "did not steal or intend to steal any equipment." Appellant believed the authorities could not "back down" from their position and wanted the county judge to "stop this chain of events from getting any more out of control." Appellant said he had "felt the 'sting'" and had "learned my lesson, and understand the seriousness of it."

In his first issue, appellant argues the trial court reversibly erred in admitting State's Exhibit 48, the video of him in the sub-courthouse removing the monitors. He argues the State was permitted "to offer into evidence, not the original copy of a video allegedly depicting the crime as it occurred—not even a duplicate copy—but a cut-and-pasted version of the original video which included only the parts that IT employee Lori Friemel deemed important enough to copy." He asserts this "version" of the evidence gave jurors an "edited version of the complete, original video," omitting "a substantial amount of time, and potentially, exculpatory evidence as well." He argues the video evidence was not "properly authenticated" and was admitted in violation of Texas Rules of Evidence 901, 1001, and 1002.

Under rule 104(a) of the Texas Rules of Evidence, whether or not to admit evidence at trial is a preliminary question to be decided by the court. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Only relevant evidence is admissible. TEX. R. EVID. 401, 402. The issue of authentication—that the proffered evidence is what the proponent claims it to be—arises when "the relevancy of any evidence depends upon its identity, source, or connections with a particular person, place, thing, or event." *Campbell v. State,* 382 S.W.3d 545, 548-49 (Tex. App.—Austin 2012, no pet.). Evidence has no relevance if it is not authentically what its proponent claims it to be. *Tienda*, 358 S.W.3d at 638.

The requirement of authentication or identification is a condition precedent to admissibility and is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims it is. TEX. R. EVID. 901(a). Whether the proponent of evidence has satisfied the threshold requirement of authenticity is one of the preliminary questions to be decided by the court. *Tienda,* 358 S.W.3d at 638. However, rule 901 "does not erect a particularly high hurdle, and that hurdle may be cleared by circumstantial evidence."

*Campbell*, 382 S.W.3d at 549. The proponent of evidence does not need to "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Id.* In fact, in performing its gate-keeping function under rule 104, the trial court itself need not be persuaded that the proffered evidence is authentic. *Tienda,* 358 S.W.3d at 638. Rather, the ultimate question of whether an item of evidence is what the proponent claims is a question for the fact finder. *Id.* In a jury trial, the preliminary question for the trial court to decide is simply whether the proponent of the proffered evidence has supplied facts sufficient to support a reasonable jury determination that the evidence is authentic. *Id.*

We review a trial court's decision as to whether evidence is properly authenticated for an abuse of discretion. *Tienda,* 358 S.W.3d at 638. A trial court does not abuse its discretion when it reasonably believes that a reasonable juror could find that the evidence has been authenticated. *Druery v. State,* 225 S.W.3d 491, 502 (Tex. Crim. App. 2007). If the trial court's ruling is at least "within the zone of reasonable disagreement," we will not interfere. *Id.*

Rule 901(b) provides a nonexclusive list of methods to authenticate evidence. One such method is the testimony of a witness with knowledge that a matter is what it is claimed to be. Tex. R. Evid. 901(b)(1). Here, the trial court heard exhaustive pre-trial and trial testimony regarding the video evidence. Friemel testified she personally reviewed the surveillance videos for the weekend during which the monitors went missing; captured each section of video from the weekend that showed activity in the building; reviewed and captured video from prior weekends; and compiled those recordings onto the DVD in question and turned it over to the sheriff's office. Friemel testified the copy she produced was a true and correct copy of the video she viewed; it had not been tampered with; and she did not alter or change any of the images in question. She ultimately produced a full backup recording of all the security video from the

month surrounding the offense and explained the process involved in making that backup. That backup was provided to the defense but it turned out to be inoperable, and a second copy was recorded directly from the backup server at the sheriff's office onto a new drive and provided to the defense. We conclude this evidence was sufficient for the trial court to determine that the State had presented facts that were sufficient to support a reasonable jury determination that the evidence is authentic. We note that appellant references his expert's testimony that seventy-two files had been "interjected" into the complete backup copy provided to the defense; however, Friemel explained on rebuttal that the metadata showing those files out of sequence was due to her running a second backup in June 2011 after the first backup sequence finished. To the extent appellant relies on this evidence to exclude the tape, such a complaint goes to the weight of the evidence, not its admissibility.

As for his complaint that the evidence violated rules 1001 and 1002, we disagree. Article X of the Rules of Evidence codifies "what was the common law 'best evidence' rule." *Englund v. State*, 946 S.W.2d 64, 67 (Tex. Crim. App. 1997). Rule 1002 states the general proposition that the original of a recording is required to prove it contents unless otherwise provided. *See* TEX. R. EVID. 1002; *see also Englund*, 946 S.W.2d at 67. Rules 1003 is an exception to the general rule. *See* TEX. R. EVID. 1003. Rule 1003 authorizes the use of copies to the same extent as an original unless one questions the authenticity of the original or demonstrates it would be unfair to admit the duplicate. TEX. R. EVID. 1003. Here, appellant is not complaining about the authenticity of the original recording; he is complaining that the DVD admitted is "nothing more than an abbreviated, altered copy of the original." He has not alleged the portions shown were not accurate representations of his actions. And although his brief makes a reference to "potentially exculpatory evidence," he does not make any argument of such evidence on appeal.

Further, he offered, and the trial court admitted, a copy on hard drive of the complete backup files. Under these circumstances, we cannot conclude the trial court erred in admitting the video. We overrule the first issue.

In his second issue, appellant contends the trial court erroneously allowed jurors to take notes and use them during deliberations without notifying him of this decision prior to voir dire. Appellant acknowledges the trial court instructed the jury in accordance with *Price v. State*, 887 S.W.2d 949, 954 (Tex. Crim. App. 1994), but he argues he should have had notice so that he could voir dire potential jurors "regarding their ability to read, write, and take notes."

The record shows the following facts pertinent to this issue. After the jury was sworn but prior to trial, the judge gave the following admonition to jurors:

> You may take notes during the course of the trial if you wish to do so. Those notes are for your purposes only. You may not show them to your fellow jurors or mention in the jury room that your notes are indicative of any matter. They may be used only to refresh your own personal memory of what you have recorded.

Appellant did not object.

After arguments concluded in the case and the jury was about to begin deliberations, the trial court again admonished: "Those notes are for your personal use only. Do not show your notes to any other juror. You may refer to your notes, but don't allude to anything contained in your notes. Just review it for your own recollection to refresh your memory." After the jury left the courtroom and began deliberations, the following occurred:

> [TRIAL COURT]: Counsel.
>
> [DEFENSE COUNSEL]: Judge, referring to the taking of notes, it's been my experience they can write down notes, but they have to remain out here. They can't take them back into the deliberations. I understand what the Court advised them regarding those notes; but what you essentially get into is somebody looking at the note and saying I've got it right here.
>
> [TRIAL COURT]: I've instructed them not to do that.

[DEFENSE COUNSEL]: No, I understand that; Judge; but I think that's why typically in a trial we make them leave notes out here. We don't allow them to go back. And I guess I'm objecting to allowing them to take their notes back with them.

The trial court then asked the State for its position on the subject, and the prosecutor said it "would seem kind of moronic to have them take notes and then not take them into the jury room with them. Why bother letting them have a pad?" The trial court reiterated that the jury had been admonished not to share their notes with other jury members and overruled appellant's objection.

The decision to allow jurors to take notes during trial or to use such notes during deliberations is left to the discretion of the trial court. *Johnson v. State,* 887 S.W.2d 957, 958 (Tex. Crim. App. 1994). We do not disturb the trial court's decision absent an abuse of discretion. *See Hubbard v. State*, 892 S.W.2d 909, 911 (Tex. Crim. App. 1995). There is no statutory prohibition against allowing jurors to consult notes during deliberation. *See Johnson*, 887 S.W.2d at 958; *Price*, 887 S.W.2d at 953 (detailing recommended steps for trial court to avoid "inherent risks of note-taking").

The record shows appellant was aware as soon as the jury was sworn that the trial court was allowing jurors to take notes, but he did not object. Further, appellant was aware jurors were taking their notes with them to deliberations but waited until deliberations began before objecting. Under these circumstances, we conclude his objection was not timely. *See* TEX. R. APP. P. 33.1; *Shannon v. State*, 942 S.W.2d 591, 596 (Tex. Crim. App. 1996). Even if the objection was timely, appellant complained only that a juror might rely on his notes instead of the evidence; he did not complain that he was unable to voir dire the jurors on their abilities to read and write. Consequently, his complaint at trial does not comport with his complaint on appeal. *See* TEX. R. APP. P. 33.1; *Lovill v. State*, 319 S.W.3d 687, 692 (Tex. Crim. App. 2009)

9

("A complaint will not be preserved if the legal basis for the complaint raised on appeal varies from the complaint made at trial."). Finally, even if appellant's objection was timely and comported with the complaint below, we could not conclude there was error.

In *Price*, the court of criminal appeals suggested the trial court can avoid any potential risk in allowing jurors to take notes by evaluating the jury's need to take notes in each case, informing the parties in advance that note-taking will be allowed, and carefully instructing the jury both at the time it is empaneled and in the jury charge. *Price*, 887 S.W.2d at 954-55. Appellant argues the trial court failed to comply with one of the recommended steps—failing to notify the parties prior to voir dire. Although the trial court may not have been in full compliance with the suggested procedures in *Price*, the trial court admonished the jury on note-taking at the time it was impaneled and again before deliberations and therefore substantially complied with the *Price* court recommendations. We overrule the second issue.

We affirm the trial court's judgments.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120909F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ERIC LYLE WILLIAMS, Appellant

No. 05-12-00909-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 422nd Judicial District
Court, Kaufman County, Texas
Trial Court Cause No. 29823-422.
Opinion delivered by Justice Francis;
Justices FitzGerald and Lewis participating.

Based on the Court's opinion of this date, the judgments of the trial court on Count One (Burglary of a Building) and County Two (Theft by a Public Servant) are **AFFIRMED**.

Judgment entered July 29, 2013

/Molly Francis/
MOLLY FRANCIS
JUSTICE

11