**Affirmed and Opinion Filed February 3, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

**No. 05-13-00478-CR**
**No. 05-13-00479-CR**

---

**VALENTIN JUNIOR HERNANDEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause Nos. F-1261625-H & F-1261626-H**

---

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Myers
Opinion by Justice Bridges

Appellant Valentin Hernandez was charged in two separate causes with aggravated robbery with a deadly weapon. Appellant pleaded not guilty, and the jury found him guilty as charged. In cause no. F12-61625, the jury assessed punishment at twenty years imprisonment. In cause no. F12-61626, the jury assessed punishment at fifteen years imprisonment. The trial court ordered that the sentences run concurrently. In one issue on appeal, appellant contends the trial court erred by admitting testimony into evidence during the punishment phase regarding information on appellant's gang cards. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the judgments of the trial court.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On October 21, 2012, at approximately 10:30 p.m., Gloria Castaneda, her boyfriend Evar Cruz, and two of Gloria's daughters were in Castaneda's vehicle, parked in a parking space in front of the apartment complex where Cruz lived. Cruz got out of the vehicle and was standing on the driver's side, talking to Castaneda through the window. Castaneda's daughters, ages eight and thirteen, were asleep in the backseat. While Cruz and Castaneda talked, a white Mustang with a black front quarter panel pulled in behind Castaneda's vehicle, blocking her exit. Two men got out of the Mustang, and one went to each side of Castaneda's vehicle. One of the men threatened to shoot Cruz if he ran, but Cruz ran for help anyway. The other man put a tire iron next to Castaneda's window and told her to get out of the vehicle. The men told Castaneda to give them everything she had, including her wallet and purse. Castaneda told them to take everything but not to hurt her children. The men took her necklace, purse, and the stereo from the car. The purse contained $850 in cash, including a two dollar bill, and Cruz's I.D. The two men left in the Mustang when Cruz returned with some of his friends.

Castaneda called the police, who put a description of the Mustang on the radio. Soon thereafter, the Mustang was stopped; appellant and his brother, Pedro Hernandez, were inside. Both men were taken to police headquarters and interviewed. Meanwhile, the police inventoried the Mustang and found most of the stolen property and a tire iron in the back seat. Appellant gave a recorded statement to the police admitting his participation in the robbery.

Appellant was charged by indictment with the offense of aggravated robbery with a deadly weapon in each case. Appellant pleaded not guilty to the charges. A trial was held before a jury, and the jury found appellant guilty of the offenses. In cause no. F12-61625, the jury assessed punishment at twenty years imprisonment. In cause no. F12-61626, the jury assessed

punishment at fifteen years imprisonment. The trial court ordered that the sentences run concurrently. Appellant now files this appeal.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

In one issue on appeal, appellant contends the trial court erred by admitting testimony into evidence during the punishment phase regarding information on appellant's gang cards. We review a trial court's ruling on the admission of evidence under an abuse-of-discretion standard of review. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside the zone of reasonable disagreement. *See Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). The trial court's ruling will be upheld if the trial court's decision is "reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

Appellant argues that testimony regarding the content of appellant's gang cards should not have been admitted under the best evidence rule. The best evidence rule provides: "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law." TEX. R. EVID. 1002; *see also Englund v. State*, 946 S.W.2d 64, 67–68 (Tex. Crim. App. 1997). "The best evidence rule rests on the fact that a document is a more reliable, complete, and accurate source of information as to its contents and meaning than anyone's description." *Overton v. State*, 490 S.W.2d 556, 559 (Tex. Crim. App. 1973); *see Ali v. State*, 26 S.W.3d 82, 88 (Tex. App.—Waco 2000, no pet.) ("Generally speaking, the only competent evidence to prove the contents of a document is the document itself."). However, the best evidence rule does not apply when the item in question is not admitted into evidence to prove its contents. *See Sharp v. State*, 707 S.W.2d 611, 618 (Tex. Crim. App. 1986). Further, the best evidence rule does not apply when

the document and its contents are only collaterally related to the issues in the case. *See Ali*, 26 S.W.3d at 88.

## III. DISCUSSION

In his sole issue, appellant contends the trial court erred by admitting the testimony of Carrollton police detective Cory Cook into evidence during the punishment phase regarding information on appellant's gang cards. In response, the State contends appellant did not preserve error for appellate review, the best evidence rule was not a proper objection in this case, and error, if any, was harmless.

### A. Evidence At Trial

The State offered the testimony of Carrollton police detective Cory Cook as character evidence regarding appellant's gang affiliation. Cook testified that he has held numerous positions with the department, including gang intelligence. Cook stated that he has known appellant since appellant was a child. Cook's most recent contact with appellant took place a year or two earlier, during an investigation of aggravated assault of a gang member. Cook testified that the complainant in that investigation claimed that a rival gang member assaulted him, and Cook interviewed appellant regarding that offense. Cook testified that appellant never directly told Cook that he was a member of a gang. Cook then testified, without objection, that according to the police department's gang data base, appellant claimed to be a member of the HHK gang on numerous occasions. Cook described the territorial nature of the HHK gang, and described their primary activities as robbery, assault, theft, burglary, and drug possession and use. Cook explained that the HHK gang also uses the name Seven Leaf Soldiers, and stated that appellant has a tattoo indicating he is affiliated with the Seven Leaf Soldiers gang.

Cook testified that the gang unit of the police department kept cards, similar to an intelligence roster, detailing the contacts police had with certain individuals. Cook testified they

had several cards for appellant, that he had reviewed appellant's cards before coming to testify, and was familiar with the types of contacts appellant had with the Carrollton police. The prosecuting attorney then asked, "[b]ased on his gang card, what types of contacts has he had with the gang unit?" Defense counsel objected, stating "[t]he best evidence is the gang card itself and if the gang card is here." Defense counsel also informed the trial court that he had not seen the cards; however, defense counsel did not ask to see the cards, and did not ask that they be produced. The trial court overruled defense counsel's objection. Cook then testified that based on his review of the gang cards, the Carrollton police gang unit had contact with appellant for incidents of fighting. He also stated there were incidents when appellant was contacted by officers and proudly proclaimed he was a member of HHK.

The State offered testimony from Deputy Margaret Brown with the Dallas County Sheriff's Department, who identified the fingerprints on various certified copies of prior judgments and certified jail cards as being appellant's fingerprints. The State also offered testimony of Rubin Morin, probation officer with Dallas County Adult Probation, who testified that appellant was initially placed on probation on March 31, 2011, for robbery and evading arrest. Morin testified that in November, 2011, appellant was placed on another probation, seven years of deferred adjudication, for aggravated assault. Morin further testified that appellant has failed to comply with the terms of his probation.

Appellant testified in his own defense, stating he has never been convicted of a felony as an adult. On cross-examination, appellant denied being a gang member or telling the police that he was a member of a gang. However, he admitted that he started using marijuana at 11 years of age, and that he started having contact with the court system around 12 years of age. He admitted being charged with making a terroristic threat when he was 12 years old, and also admitted committing juvenile burglary of a habitation and juvenile aggravated assault. He

admitted being expelled from Perry Middle School for gang activity, but denied being involved in gang activity. He admitted having a tattoo on his hand that says Seven Leaf Soldier but testified he got the tattoo because his friends pressured him to get it, not because he was a gang member. Appellant admitted that in 2010, he was charged with evading arrest for running into a car and striking other cars before jumping out and fleeing. However, he denied yelling that he was a member of the How High Krew (HHK) when getting out of his car. He admitted that he and his ex-girlfriend were involved in a robbery around the same time. Appellant admitted that while he was on probation for robbery and evading arrest, he also pled guilty to aggravated assault with a deadly weapon; however, appellant stated that he did not commit this offense. And appellant testified that he did not remember what happened the night that he allegedly committed the aggravated robbery described in this case, and did not remember giving a statement to the police admitting he was involved in the offense.

### B. *Applicability Of Best Evidence Rule*

Appellant complains that the whole purpose of Cook's testimony was to show the jury that appellant was a gang member and a menace to society. Appellant argues that because Cook's assertion that appellant was a gang member was based strictly on the gang cards, it is of great importance to know whether Cook's testimony regarding the content of the cards was accurate. Therefore, according to appellant, Cook's testimony regarding the content of the gang cards should not have been admitted under the best evidence rule. *See* TEX. R. EVID. 1002.

Cook's testimony clearly demonstrated that he had known appellant and his family since appellant was a child, and his knowledge of appellant's gang affiliation was not based strictly on the Carrollton police department's gang cards. Furthermore, Cook was asked about the gang cards kept by the Carrollton police department gang unit after he had already testified, without objection, that his research in the department's gang data base and contacts with appellant

showed that appellant claimed to be a member of the HHK gang. Cook then testified, again without objection, that the department had several gang cards on appellant. The prosecuting attorney did not ask Cook to testify as to the exact content of appellant's gang cards. Instead, Cook was asked, "[b]ased on his gang card, what types of contacts has he had with the gang unit?" The aim was not to prove the contents of appellant's gang cards but to provide background relating to the ascertainment of appellant's gang affiliation. *See Overton*, 490 S.W.2d at 559 ("It should be stressed that the [best evidence] rule applies only where the purpose of the offered evidence is to prove the contents of the document."). It is evident that neither party considered the specific content of the gang cards to be important in this case because the State did not attempt to admit the gang cards into evidence, and defense counsel did not ask to see the cards or request that they be produced.

We conclude the best evidence rule was not applicable, and the trial court did not abuse its discretion by admitting Cook's testimony regarding the types of contacts appellant had with the Carrollton police department's gang unit. *See Ali*, 26 S.W.3d at 88. We overrule appellant's sole issue.

## IV. CONCLUSION

Having overruled appellant's sole issue, we affirm the trial court's judgments.


Do Not Publish
TEX. R. APP. P. 47                                                   /David L. Bridges/
130478F.U05                                                         DAVID L. BRIDGES
                                                                    JUSTICE

–7–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

VALENTIN JUNIOR HERNANDEZ,
Appellant

No. 05-13-00479-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F-1261626-H.
Opinion delivered by Justice Bridges.
Justices Francis and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 3, 2015.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

VALENTIN JUNIOR HERNANDEZ,
Appellant

No. 05-13-00478-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F-1261625-H.
Opinion delivered by Justice Bridges.
Justices Francis and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 3, 2015.