**Shawn SHUGART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–98–206–CR.**

Court of Appeals of Texas,
Waco.

Oct. 25, 2000.

Walter M. Reaves, West, for appellant.

Gina M. Debottis, Special Pros. Unit, Huntsville, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

Shawn Shugart was charged with two counts of aggravated assault with a deadly weapon and one count of possession of a deadly weapon in a penal institution. *See* TEX.PEN.CODE ANN. §§ 22.02, 46.10 (Vernon 1994). The case was tried to a jury, which made no finding on count one, a finding of "not guilty" on count two, and a "guilty" finding on count three. Shugart did not elect to have the jury assess punishment. The Court sentenced him to ten years' imprisonment. He appeals, asserting four issues for review. His first two claims assert that the evidence is legally and factually insufficient to sustain a verdict for possession of a deadly weapon in a penal institution because the evidence shows that the injuries inflicted were superficial, there were no threats or other assertive conduct accompanying the use of the weapon, and there was no testimony that the weapon was designed for the purpose of inflicting serious bodily injury or death. His third and fourth issues assert that the court erred in excluding testimony concerning the contents of a letter written by Shugart and by refusing to submit an instruction on the defense of necessity. We will affirm the judgment.

### FACTS

Shugart maintained a relationship with a co-inmate, Reynaldo Delarosa. While in

the "day room," Shugart approached Delarosa, and an argument erupted. Delarosa walked away, but Shugart approached him again and slapped him. Shugart then stabbed Delarosa with a homemade weapon. The weapon was described as a metal rod, approximately four inches in length, sharpened to a point on one end with a cloth wrapped around the other end. Another inmate, Ricky Sessions, attempted to intervene, and Shugart struck him with the weapon as well. Delarosa and Sessions were both treated for minor injuries. Delarosa's injuries were to his chest, and Sessions' injuries were to his ear and chest. Although the injuries were not life threatening, the nurses who treated Sessions and Delarosa testified that such a weapon could cause serious bodily injury.

## SUFFICIENCY OF THE EVIDENCE

In his first two issues, Shugart asserts that the evidence is legally and factually insufficient to establish that the weapon possessed was a "deadly weapon," where there is no evidence the weapon was designed to inflict death or serious bodily injury, and the injuries actually inflicted were not serious.

### Legal Sufficiency Standard

■ In determining whether the evidence is legally sufficient to support the verdict, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Weightman v. State*, 975 S.W.2d 621, 624 (Tex. Crim.App.1998); *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App.1996) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)); *Westfall v. State*, 970 S.W.2d 590, 595 (Tex.App.—Waco 1998, pet. ref'd).

### Factual Sufficiency Standard

■ In conducting a factual-sufficiency review, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000) (citing *Mata v. State*, 939 S.W.2d 719, 729 (Tex.App.—Waco 1997, no pet.) (Vance, J., concurring)). When performing our review, we give due deference to the fact finder's assessment of the weight and credibility of the evidence. *Id.* at 13. We will find the evidence factually insufficient only where necessary to prevent manifest injustice. *Id.*

### Application of Standards

The court's charge defined "deadly weapon" as "anything made or adapted for the purpose of inflicting death or serious bodily injury, or that in the manner of its use or intended use is capable of causing death or serious bodily injury." Serious bodily injury was defined as bodily injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or the impairment of the function of any bodily member or organ."

### The Evidence is Legally Sufficient

■ Shugart argues that his weapon was intended for self-defense and so could not be "manifestly" designed to inflict serious bodily injury as a matter of law. Tex. Pen.Code Ann. § 1.07(a)(17)(A) (Vernon 1994). However, "[s]ubsection (A), by its clear language, describes a deadly weapon by its physical characteristics." *McCain v. State*, 22 S.W.3d 497, 502 (Tex.Crim. App.2000). For this reason, the Court of Criminal Appeals has rejected the theory that an object can be a deadly weapon under this subsection for reasons other than its physical characteristics. *Id.* Because it is the physical characteristics of an object which control the determination under subsection (A), the motivation behind the creation of an object, *i.e.*, whether the person who created the weapon in-

tends to deploy it offensively or defensively to inflict death or serious bodily injury, does not control the classification of the object as a deadly weapon. *See id.* An object which is manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury in self-defense is a deadly weapon under subsection (A). Shugart's claim that items intended for self-defense cannot be deadly weapons has been rejected by the Court of Criminal Appeals and does not establish a basis for finding the evidence legally insufficient.

Shugart also asserts that because the weapon did not, in fact, inflict death or serious bodily injury, it was imperative that the State establish the capability of the weapon to cause serious bodily injury or that it was displayed or used in a manner showing an intent to use it to cause death or serious bodily injury. He cites *Garza v. State*, 695 S.W.2d 726 (Tex. App.—Dallas, 1985), *aff'd*, 725 S.W.2d 256 (Tex.Crim.App.1987). However, in *Thomas v. State*, the Court of Criminal Appeals established that the State may prove that an object is a deadly weapon "by adducing sufficient evidence that it was, in fact, 'manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury[.]' If the evidence is adequate for such purpose, then it is sufficient to establish the object as a deadly weapon. No other proof is required." *Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Crim.App. 1991). More specifically, the Court states that "it is not necessary to verify that the object was really capable of causing death, either in the manner of its actual use or in the manner of its intended use." *Id.*

Here, the evidence establishes through the testimony of officers Eunice Cole, Brian Buster, and Carl Krischke that the device used by Shugart was a metal rod, "like an ice-pick type weapon," sharpened to a point on one end with a cloth wrapped around the other end for use as a handle. Cole speculated that the metal rod was originally some sort of spring out of a night light. This description invokes

the term "shank," commonly used to describe "homemade stabbing devices" used as weapons in prison. *See Berry v. State*, 833 S.W.2d 332, 333 (Tex.App.—Waco 1992, no pet.). Viewing it in the light most favorable to the verdict, we find the evidence legally sufficient to justify a finding that the device was "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." *Thomas*, 821 S.W.2d at 620.

Shugart suggests that, even if there is evidence that the weapon was made or adapted to cause serious bodily injury, the fact that it could not cause such injury should bar a finding that it is a deadly weapon. However, as stated previously, it is not necessary to verify the object was really capable of causing death, either in the manner of its actual use or in the manner of its intended use. *Id.*

The nurse who treated Delarosa, Shannon Winters, testified that the weapon could possibly cause serious injury to the eye or ear, and could cause death if used to penetrate the arteries in the neck. Katy Hawkins, the nurse who treated Sessions, testified similarly. Carl Krischke, one of the guards who responded when Shugart attacked Delarosa and Sessions, testified that he had seen inmates seriously injured with weapons like the one Shugart had and that he believed Shugart's weapon could have caused serious bodily injury. Viewed in the light most favorable to the verdict, the evidence is legally sufficient to support a finding that the weapon was, in the manner of its use or intended use, capable of causing death or serious bodily injury. TEX.PEN.CODE ANN. § 1.07(a)(17)(B).

### The Evidence is Factually Sufficient

Shugart advances two theories to establish that the evidence was factually insufficient to support the deadly-weapon element. First, Shugart asserts the evidence implying that the weapon was designed only for self-defense outweighs the

evidence showing it was "manifestly" designed to inflict serious bodily injury. As we established above, whether the creation of the weapon was motivated by a desire for self-defense is not the focus of the inquiry, and any evidence tending to establish this motivation could not overwhelm the evidence showing the physical characteristics of the object. Tex.Pen.Code Ann. § 1.07(a)(17)(A); *McCain*, 22 S.W.3d at 502.

Shugart also claims that the evidence is factually insufficient to show that the object was a deadly weapon under subsection (B) because "based on the injuries inflicted, [Shugart]'s statement and Delarosa's testimony, a finding that the weapon was used in a manner indicating an intent to cause serious bodily injury is against the great weight and preponderance of the evidence." However, "[t]he provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. The placement of the word 'capable' in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force." *McCain*, 22 S.W.3d at 503. Thus, Shugart's argument that the evidence is factually insufficient to support a finding that he *intended* to cause death or serious bodily injury is misplaced.[1]

Moreover, the evidence is sufficient to support the jury's finding that Shugart used the weapon in a manner *capable* of causing serious bodily injury. The evidence showed that the injuries to both Delarosa and Sessions were superficial; in fact, Delarosa testified that he suffered no pain from the assault and Sessions said

that he "didn't feel it" when he was first stabbed. In his statement, Shugart indicated that he did not intend to kill Delarosa, but only wanted to get his "attention." Delarosa also testified that he did not think that Shugart intended to hurt him. The injuries to Delarosa were in the chest. However, there was other evidence, detailed above, which indicated both that the weapon could cause serious bodily injury, that it was most likely to cause such injury if used against the victim's eyes, ears, or neck, and that other inmates had been seriously injured by similar weapons "like" the one Shugart used. Given that Shugart specifically targeted Sessions' head, which includes the eyes, ears, and neck, the jury was justified in finding that he used his weapon in a manner in which it was capable of causing serious bodily injury.

For these reasons, we must reject Shugart's assertions that the evidence is factually insufficient. *Johnson*, 23 S.W.3d at 11. Shugart's issues one and two are without merit.

## EXCLUDED EVIDENCE

Shugart complains in his third issue that Terry McNeill, a friend with whom Shugart corresponded from prison, was not allowed to testify as to the contents of several letters Shugart had written to him. The letters were not brought to trial. McNeill attempted to testify that Shugart expressed fear of Delarosa because of a threatening letter he had received from Delarosa, but the court sustained the State's objection that this testimony was hearsay. The "threatening letter" from Delarosa to Shugart was admitted into evidence.

---

1. We recognize that Shugart's argument is supported by a line of cases holding that if the evidence does not show actual injury, then there must be evidence of the actor's intent to cause injury. *See, e.g., Bailey v. State,* 7 S.W.3d 721, 724 (Tex.App.—Corpus Christi 1999, pet. granted); *Wade v. State,* 951 S.W.2d 886, 892 (Tex.App.—Waco 1997, pet ref'd); *Lockett v. State,* 874 S.W.2d 810, 814 (Tex.App.—Dallas 1994, pet. ref'd). In our view, these holdings do not survive *McCain. McCain v. State,* 22 S.W.3d 497 (Tex.Crim. App.2000).

■ Although the court did not rule on the State's objection that this was not the best evidence of Shugart's statements contained in the letter, the State nevertheless urges this position on appeal. It is well established that when a trial court's ruling on the admission of evidence is correct for any reason, although a wrong or insufficient reason is given for its admissibility, the ruling must be sustained on appeal. *See Sewell v. State*, 629 S.W.2d 42, 45 (Tex.Crim.App. [Panel Op.] 1982); *Miles v. State*, 488 S.W.2d 790, 792 (Tex.Crim.App. 1972); *Spann v. State*, 448 S.W.2d 128, 130 (Tex.Crim.App.1969). This rule of appellate review also applies when the court excludes evidence which the defendant offers into evidence. *See Weatherred v. State*, 975 S.W.2d 323, 323 (Tex.Crim.App. 1998) (If the trial court's decision to exclude evidence is correct on any theory of law applicable to the case, including Rule 403, it will be sustained.); *see also Prystash v. State*, 3 S.W.3d 522, 527 (Tex.Crim. App.1999); *Smith v. State*, 898 S.W.2d 838, 843 (Tex.Crim.App.1995). We must, therefore, determine whether the evidence was properly excluded under either theory.

It is Shugart's contention that: 1) the excluded testimony went to his state of mind and, ultimately, to the issue of self-defense; and 2) the best evidence rule does not apply to this type of evidence. *See* TEX.R.EVID. 803, 1002.[2]

■ We first address the argument that the court improperly excluded this testimony as hearsay. The testimony which Shugart attempted to elicit would be considered hearsay under Rule of Evidence 801 if no exception to the hearsay rule applies. *See id.* 801. An out-of-court statement offered during trial to prove the truth of the matter asserted is inadmissible unless the statement falls within one of the exceptions to the hearsay rule. *Id.* 801(d), 802. The hearsay exception which Shugart claims is applicable to his state-

ments is found in Rule 803(3) of the Rules of Evidence: statements expressing the declarant's then-existing state of mind are admissible. *Id.* 803(3). Such statements are relevant where self-defense is an issue in the case. *Buhl v. State*, 960 S.W.2d 927, 932 (Tex.App.—Waco 1998, pet. ref'd).

In *Buhl v. State*, we stated that a simple comment that the defendant said he was afraid of the victim would be admissible under Rule 803 because his fear would appear to be a statement of his then-existing emotional condition. *Id.* at 933. This is the type of testimony which Shugart attempted to elicit from McNeill. In *Buhl*, we found that the defense sought to elicit further explanation of the reason for Buhl's fear, *i.e.*, that it was caused by the victim's previously pulling a gun on him. *Id.* We found that the court acted within its discretion to exclude this further testimony because it was offered to prove the truth of a fact the declarant remembered or believed, *i.e.*, that the victim pulled a gun on him in the past. *Id.* Unlike *Buhl*, where the relevance of the statement that Buhl was afraid hinged upon the truthfulness of his assertion that the victim had pulled a gun on him, the relevance of Shugart's fear was dependent on a letter from Delarosa which was already in evidence. Because McNeill's testimony would have been limited to the fact that Shugart had expressed fear of Delarosa, his testimony was not inadmissible as hearsay.

■ We next consider the State's argument that the evidence was properly excludable on the basis of the best evidence rule. The Court of Criminal Appeals has considered the rationale behind the best evidence rule. In *Englund v. State*, the Court considered four reasons why the common-law best-evidence rule existed:

---

**2.** We assume that the State is referencing Rule of Evidence 1002 when it claims that this evidence was not the "best evidence."

The State failed to cite any authority in its response to this issue.

(1) The nature of documents is often such that the exact words are "of more than average importance, particularly in the case of operative or dispositive instruments ... where a slight variation of words may mean a great difference in rights.

(2) Secondary evidence—whether parol testimony or copies—is susceptible to both human and mechanical error. The rule, therefore, enhances the probability of accuracy.

(3) The rule promotes the prevention of fraud because it allows the parties to examine documents for any defects or alterations, and it dampens any desire to color testimony as to the contents of documents, since any testimony is subject to immediate corroboration.

(4) The appearance of the original may furnish information as to its authenticity and significance that may be lacking in a copy, such as handwriting, paper and the like.

*Englund v. State,* 946 S.W.2d 64, 67–68 (Tex.Crim.App.1997). The Rule was clearly intended to apply where one attempts to use a duplicate or to rely on one's recollection rather than use an original when the language of the document itself is important. None of these reasons for requiring the original of a document can be construed to justify exclusion of verbal testimony or require that Shugart offer the letter itself into evidence. Thus, exclusion on this basis was likewise improper.

 The exclusion of testimony is non-constitutional error governed by Rule of Appellate Procedure 44.2(b). *Fowler v. State,* 958 S.W.2d 853, 864–65 (Tex.App.— Waco 1997) *aff'd,* 991 S.W.2d 258 (Tex. Crim.App.1999). In applying the test for "harmless error" under Rule 44.2(b), our primary question is what effect the error had, or reasonably may have had, upon the jury's decision. *Id.* at 865. We must view the error, not in isolation, but in relation to the entire proceeding. *Id.* We review the

entire record to determine whether the error had more than a slight influence on the verdict. *Id.* at 866. If we find that it did, we must conclude that the error affected the defendant's rights in such a way as to require a new trial. *Id.* If we have grave doubts about its effect on the outcome, we should find that the error was such as to require a new trial. *Id.* Otherwise, we should disregard the error. *Id.*

 Shugart wanted the jury to hear from McNeill that Shugart had expressed fear of Delarosa and another inmate. That fear was based on a note that Shugart received from Delarosa. That note was admitted into evidence. It states, in full:

> Fuck You Chavalon
> And Just Leve Me
> Alone I'm Not
> Here No
> More I Hope
> You Die Or
> Get Real Sick
> And I Got A Big
> Surprise For You [3]

Thus, the jury was aware of the threat which was the basis of the fear about which McNeill would have testified. Additionally, Delarosa testified on Shugart's behalf. In his testimony, Delarosa explained to the jury that he wrote the note in question with the intent of threatening Shugart. This is evidence from which the jury could have inferred Shugart's fear if it believed his self-defense theory.

However, those present at the time of the incident testified that Shugart was the aggressor during the incident in question. He approached Delarosa, and they began to argue. Delarosa then walked away and began talking to Officer Eunice Cole. Shugart then went up to Delarosa, slapped him, and then pulled out the homemade weapon and stabbed Delarosa with it. When Sessions attempted to intervene, Shugart stabbed him as well. In light of

---

**3.** Spelling and punctuation as in original.

this evidence, it is doubtful that McNeill's testimony could have had more than a slight influence on the verdict. *Id.* Issue three is without merit.

## NECESSITY

 In his last issue, Shugart proposes that the court erred in failing to submit an instruction on necessity to the jury. He asserts that there was evidence that Delarosa had threatened him and that he feared for his safety, thus justifying such an instruction.

 It is a defense to prosecution that otherwise criminal conduct is justified by necessity if: 1) the actor reasonably believes that the conduct is immediately necessary to avoid imminent harm; 2) the harm sought to be avoided is clearly greater than the harm sought to be prevented by the statute violated; and 3) a legislative purpose to exclude the justification claimed for the conduct does not plainly appear. *Rios v. State,* 1 S.W.3d 135, 137 (Tex.App.—Tyler 1999, pet. ref'd) (citing Tex.Pen.Code Ann. § 9.22 (Vernon 1994)).

We first address whether the necessity defense may apply to the offense of possession of a deadly weapon in a penal institution. In *January v. State,* the Tyler Court found that the defense was not available for this offense. It stated: "[T]he legislative purpose of the statute is mutually exclusive with the defense of necessity.... To allow inmates to possess deadly weapons under any circumstances would pose a significant safety threat to inmates and prison personnel alike, and would seriously undermine the security of penal institutions." *January v. State,* 811 S.W.2d 631, 634 (Tex.App.—Tyler 1991, pet. ref'd). However, the Tyler Court has since reconsidered this holding in light of the Court of Criminal Appeals opinion in *Spakes v. State,* 913 S.W.2d 597, 598 (Tex. Crim.App.1996). *See Rios,* 1 S.W.3d at 137, n. 1.

In *Spakes,* the Court of Criminal Appeals held that the necessity defense applies "*to all offenses* unless the Legislature has specifically excluded it from them." *Spakes,* 913 S.W.2d at 598 (emphasis added). At least two other courts of appeals have addressed this issue and held that the necessity defense can apply to the offense of possession of a deadly weapon in a penal institution. *Gonzales v. State,* 972 S.W.2d 877, 879 (Tex.App.—Texarkana 1998) *rev'd on other grounds,* 994 S.W.2d 170 (Tex. Crim.App.1999); *Rivera v. State,* 948 S.W.2d 365, 370 (Tex.App.—Beaumont 1997, no pet.). Following *Spakes,* we join our sister courts and hold that the defense of necessity may be available for the offense of possession of a deadly weapon in a penal institution. We now address whether the court should have instructed the jury on it.

 Shugart offered evidence that he was afraid of Delarosa because of a note he received from him. We must consider whether this evidence shows that the "desirability and urgency of avoiding the harm clearly outweigh ... the harm sought to be prevented by the law proscribing the conduct...." Tex.Pen.Code Ann. § 9.22(2). By this statute, the Legislature sought to protect all inmates and employees present in the institution. *Rios,* 1 S.W.3d at 135. Appellant has not shown how his own safety, or indeed, the safety of any one individual, clearly outweighs the safety of numerous other inmates and employees of the Institutional Division of the Texas Department of Criminal Justice. *Id.*

 Furthermore, in order to warrant a plea of justification based on necessity, the defendant must specifically admit to the offense. *Allen v. State,* 971 S.W.2d 715, 720 (Tex.App.—Houston [14th Dist.] 1998, no pet.); *Auston v. State,* 892 S.W.2d 141, 145 (Tex.App.—Houston [14th Dist.] 1994, no pet.); *Pentycuff v. State,* 680 S.W.2d 527, 528–29 (Tex.App.—Waco 1984, pet. ref'd). The necessity instruction is not required unless there was evidence from the accused admitting the offense, and henceforth claiming justification for

having committed the offense because of other facts. *See Maldonado v. State,* 902 S.W.2d 708, 712 (Tex.App.—El Paso 1995, no pet.). Shugart did not admit the offense. Issue four is without merit.

Having found no merit in any of the issues presented, we affirm the judgment.

Justice GRAY concurring.

GRAY, Justice, concurring.

The State objected to the testimony regarding the contents of two letters from Shugart to Terry McNeil on the basis that the testimony violated the "best evidence" rule and was hearsay. The trial court expressly sustained the hearsay objection and excluded the evidence. On appeal, Shugart contends that exclusion was error. In reply to Shugart's issue on appeal, the State again argues that exclusion under either theory is correct. Shugart has not shown that the trial court abused his discretion by excluding the evidence. The State is correct that either objection could be a proper ground for exclusion of the evidence. Because the majority opinion determines that the trial court erred, but holds that it was harmless and affirms the conviction, I respectfully concur in the result but not the reasoning of their opinion.

## STANDARD OF REVIEW

The admission or exclusion of evidence is committed to the trial court's sound discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995); *See Kelly v. State,* 824 S.W.2d 568, 574 (Tex. Crim.App.1992). Applying this standard, we must determine whether the trial court's ruling was "within the zone of reasonable disagreement." *Rachal v. State,* 917 S.W.2d 799, 807 (Tex.Crim.App.1996).

## THE TESTIMONY AND THE OFFER

To fully understand why the trial court did not err when he refused to allow Shugart to introduce testimony of the contents of letters written to another inmate, the context, as well as the content, of the testimony must be evaluated. First, the altercation occurred August 15, 1996. Second, the following testimony had already been elicited from Delarosa, the victim (also know as "Rosy"):

Q. So y'all had been making threats to each other the night before this happened, hadn't you?

A. Yes, sir.

Q. In fact, you wrote him a note and gave it to him the night before this happened, didn't you?

A. Yes, sir.

Q. I want to show you what has been marked Defendant's Exhibit 1 or D–1 and ask you if you recognize that particular document?

A. Yes, sir.

Q. What is that particular document, Mr. Delarosa?

A. I tried—I guess it's like a threat. I tried to threaten him. I was mad, you know.

Q. All right. Is this particular document in your handwriting?

A. Yes, sir.

\* \* \*

Q. Correct me if I read this wrong. It says, "Fuck you, Shavnon non." Tell the jury what Shavnon non means. Is that a Spanish term?

A. It's like the meaning for youngster.

Q. Youngster. All right. "And just leave me alone. I'm not here no more. I hope you die or get real sick and I got a big surprise for you." Is that correct?

A. Yes, sir.

Q. So the night before this particular incident took place, you gave that to Shawn Shugart; is that correct?

A. Yes, sir.

Now, we must review the specific testimony of McNeil that was offered in the bill of exceptions. The offered testimony included the following:

Q. I want to ask you this: Did you receive any type of correspondence or letters from Shawn Shugart that expressed any fears which he had regarding some inmates?

A. Yes.

Q. Would you tell the Court exactly what you remember about the letters? And before you answer that, you don't have the letters anymore, do you?

A. No.

Q. What did the letters say about any fears which he might have had about inmates in TDC?

A. I remember two separate things. The first one I remember he said he feared two inmates and he had written someone, some official in the prison system or in that prison.

Q. Do you know about when you received that particular communication or letter, Terry?

A. Well, I mean, I don't really know for sure.

Q. Was it in 1996?

A. It was in August, approximately August, give or take a week or two.

Q. And did he mention any names about who he was afraid of?

A. Rosy is the only name I remember him mentioning.

Q. Well, and did he send you any other communication or letters that stated this particular concerning or fear which he had?

A. There was another one stating that he had received a letter saying—or a note, whatever, from Rosy stating that he wished he was dead and he had a big surprise and he took that as—that they—he was really after him.

Q. And again, do you know when he got that particular letter?

A. It was—they weren't—those two letters were not far apart.

Q. But as far as dates, you can't remember?

A. Not exactly.

Based on this state of the record there are several observations that are noteworthy. The dates Shugart prepared the letters sent to McNeil are not established. One of the letters referenced another document that the testimony established had been delivered to Shugart the night before the altercation. The testimony does not establish that either letter was prepared prior to the August 15, 1996 altercation. Additionally, the testimony does not establish anything more than Terry McNeil no longer had the letters. What had happened to the letters or where the letters were at the time of trial was not shown and would require the trial court to speculate.

## BEST EVIDENCE

The "best evidence" objection is a proper basis for exclusion of oral testimony to prove the contents of the letters. Rule 1002 provides "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law." TEX.R.EVID. 1002. Evidence of the contents of a document can be admitted if it meets one of the exceptions listed in Rule 1004 which provides:

Rule 1004. **Admissibility of Other Evidence of Contents**

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:

(a) Originals Lost or Destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith;

(b) Original Not Obtainable. No original can be obtained by any available judicial process or procedure;

(c) Original Outside the State. No original is located in Texas;

(d) Original in Possession of Opponent. At a time when an original was under the control of the party against

whom offered, that party was put on notice, by the pleadings or otherwise, that the content would be a subject of proof at the hearing, and that party does not produce the original at the hearing; or

(e) Collateral Matters. The writing, recording or photograph is not closely related to a controlling issue.

TEX.R.EVID. Rule 1004.

The Court of Criminal Appeals has explained the rational of the best evidence rule. They have stated:

> The best evidence rule is applicable; it requires that if the contents of a writing are to be proved, it must be by the production, if possible, of the very writing itself. 3 R. Ray, TEX.LAW OF EVID., Section 1563 (Texas Practice 3rd ed.1980). The professed purpose of the production of documents rule being to secure, not the writing at all hazards, but the best obtainable evidence of its contents, if the document cannot as a practical matter be produced, because of its loss, destruction, or absence from the proponent's or the court's control, the production of the original is excused and other evidence of its contents is received. 3 R. Ray, TEX.LAW OF EVID., Section 1571 (Texas Practice 3rd ed.1980).

*Ortiz v. State,* 651 S.W.2d 764, 766 (Tex. Crim.App.1983).

The Court of Criminal Appeals has also explained the reasons for which the rule was developed at common-law. They summarized them as follows:

> "Four somewhat overlapping reasons have been advanced to justify a rule preferring production of the original:
>
> "(1) The nature of documents is often such that the exact words are "of more than average importance, particularly in the case of operative or dispositive instruments ... where a slight variation of words may mean a great difference in rights."

> "(2) Secondary evidence—whether parol testimony or copies—is susceptible to both human and mechanical error. The rule, therefore, enhances the probability of accuracy.
>
> "(3) The rule promotes the prevention of fraud because it allows the parties to examine documents for any defects or alterations, and it dampens any desire to color testimony as to the contents of documents, since any testimony is subject to immediate corroboration.
>
> "(4) The appearance of the original may furnish information as to its authenticity and significance that may be lacking in a copy, such as handwriting, paper and the like. J. Weinstein, M. Berger & J. McLaughlin, Weinstein's Evidence ¶ 1002[02] (1995).

*Englund v. State,* 946 S.W.2d 64, 67–68 (Tex.Crim.App.1997).

Shugart appears to have attempted to account for the absence of the original for admission under exception (a). The majority opinion holds the testimony regarding the contents of the letter was not prohibited by any of the common-law reasons for the rule. The majority opinion concludes: "The Rule was clearly intended to apply where one attempts to use a duplicate or to rely on one's recollection rather than use an original when the language of the document itself is important. None of these reasons for requiring the original of a document can be construed to justify exclusion of verbal testimony or require that Shugart offer the letter itself into evidence." That is exactly what the rule requires. The evidence that Shugart offers clearly implicates at least the second and third reasons the rule was developed at common-law. In this instance it could also be argued that the first and fourth reasons were applicable.

The majority opinion has elevated an exception to the rule, and used it to destroy the clear language of the rule. The majority opinion would have the trial court first determine whether the opponent has shown that the "collateral matters" excep-

tion is not applicable. If not, the best-evidence rule is not a proper ground for exclusion. The rule and its exceptions are built to work the other way. Upon proper objection the rule applies unless the proponent of the evidence establishes that the exception is applicable.

The trial court only erred if he abused his discretion in excluding the evidence. Based upon the testimony, the court could have concluded the absence of the original had not been sufficiently accounted for and that the issue of showing his fear of Delarosa was more than a collateral issue to his theory of having a weapon for self defense. Shugart has not shown that the trial court abused his discretion by determining that the exception is not applicable.

### HEARSAY

The hearsay objection calls for a relatively straight forward application of the hearsay rule and one of its many exceptions. Hearsay is defined as "... a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R.EVID. 801(d). The hearsay rule provides that "Hearsay is not admissible except as provided by statute or these rules or by other rules prescribed pursuant to statutory authority." TEX.R.EVID. 802. Shugart argues that his statements in the letters to McNeil were admissible as an exception to the hearsay rule. He argues that the statements were admissible as a "state of mind exception." TEX.R.EVID. 803(3). The exceptions provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ... (3) **Then Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered

or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

*Id.*

The purpose of McNeil's testimony was to establish an evidentiary basis to argue that the weapon was a necessity for self-defense. The testimony offered was that Shugart said he was afraid of Delarosa ("Rosy") in letters to McNeil. There is no dispute that the testimony of McNeil was being offered to prove that Shugart was in fact afraid of Delarosa. Thus they were out of court statements offered as evidence to prove the truth of the matter asserted. The evidence is classic hearsay. Of course hearsay testimony is admissible if it qualifies as an exception to the rule which otherwise requires the exclusion of hearsay. There are many exceptions. The burden is on the party offering the hearsay statement to establish that an exception is applicable.

To qualify as an exception under 803(3) the timing of the statement is critical. If the statement was made *before* the altercation and was made as a then existing state of mind (e.g. "I am afraid of him"), it would be admissible as an exception. However, if the statement was made *after* the altercation, it would either be an inadmissible statement of memory of the condition that existed prior to the altercation (e.g. "I was afraid of him") or it would be a state of mind that existed after the altercation and therefore irrelevant (e.g. "I am afraid of him"). Only if the statement of fear was made *prior* to the altercation, while then operating under that fear would the statement be admissible. Thus the specific wording, as well as the timing, of the statement made in the form of letters to McNeil are critical to the analysis of their admissibility.

Based upon the record, it is clear that whether the statements were made before or after the altercation was not established. At best the evidence was that the statements were made in "approximately August, give or take a week or two."

Thus the period when they could have been made extends from July 17, 1996 to September 14, 1996. More important to the analysis, the evidence does not establish that the statements in the letters were made prior to the altercation.

The trial court was there and able to judge the demeanor and credibility of the witness. Shugart has not shown that the trial court abused his discretion by excluding the evidence.

## NECESSITY

As the majority concludes in the final paragraph, in order to warrant a plea of justification based on necessity the defendant must admit to the offense. Shugart did not admit the offense. The trial court did not err in refusing to submit an instruction on necessity. The majority opinion's discussion and purported holding that the defense of necessity may be available for the offense of possession of a deadly weapon in a penal institution is unnecessary to the disposition of this appeal, dicta, and accordingly I do not join in that part of the opinion.

## OTHER ISSUES

I concur in the remaining parts of the majority opinion not expressly discussed herein.