# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00231-CR

---

**Wesley Eugene Perkins, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM COUNTY COURT AT LAW NO. 8 OF TRAVIS COUNTY
### NO. C-1-CR-19-200932
### THE HONORABLE CARLOS HUMBERTO BARRERA, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury convicted Wesley Eugene Perkins of the Class B misdemeanor of enhanced driving while license invalid (DWLI) and assessed his punishment at 45 days in jail and a $2,000 fine. *See* Tex. Transp. Code §§ 521.457(a)(3), (f)(1)–(2), 601.051, 601.191. In nine appellate issues, Perkins contends that the trial court lacked personal jurisdiction over him, it lacked subject-matter jurisdiction for this prosecution, and it abused its discretion by admitting evidence of his prior offenses and arrests, prior surcharges, and invalid car tags; that *Brady* violations require reversal; that an appointment of standby counsel requires reversal; and that the entire Transportation Code is unconstitutional. We affirm.

### BACKGROUND

Jason Hallmark, a senior police officer with the Austin Police Department, was on patrol on January 23, 2019, when he saw the driver of a Toyota minivan fail to signal an intent

to change lanes when the minivan changed lanes. Hallmark then followed the minivan and discovered that it lacked valid Texas license plates, instead bearing non-state-issued tags, and had a broken taillight. He initiated a traffic stop and spoke to the driver after they both pulled into a parking lot. Their whole interaction was audio- and video-recorded.

The driver—Perkins—admitted that he did not have a Texas driver's license and that he had other pending criminal charges, including an arrest, for driving without a license. He added, "I'm not driving; I'm traveling," and that the minivan is "actually not a vehicle." He also said that the minivan is not registered in Texas and that he had never registered it in Texas. He then admitted that he did not have insurance on the car.

Because of Perkins's lack of a driver's license, registration, and insurance and his statements suggesting that he refused to get any of those, Officer Hallmark arrested Perkins and took him to jail. While in the back of the patrol car on the way to jail, Perkins asserted, "It's not a vehicle unless you register it and title it."

The State charged Perkins with the Class B misdemeanor of DWLI. At trial, Officer Hallmark and Perkins's probation officer testified, and the trial court admitted several exhibits offered by the State, including several showing Perkins's expired license; driving record; and prior offenses, including one for driving with an invalid license and another for not having established financial responsibility, such as liability insurance, for a vehicle that he was driving. Perkins put on a case-in-chief and testified, and the trial court admitted exhibits that he offered. He now appeals his conviction.

**DISCUSSION**

**I.     The information invested the trial court with personal jurisdiction over Perkins.**

In his first issue, Perkins contends that the trial court lacked personal jurisdiction over him. For this Class B misdemeanor prosecution, the trial court could obtain personal jurisdiction over Perkins upon the filing of a valid information. *See Jenkins v. State*, 592 S.W.3d 894, 898 (Tex. Crim. App. 2018). "Validity" in this sense requires simply that the charging instrument (1) charge a person and (2) charge the commission of an offense. *See* Tex. Const. art. V, § 12(b) ("An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense."); *Jenkins*, 592 S.W.3d at 898 (citing Tex. Const. art. V, § 12(b)). On appeal, Perkins does not appear to contest that the information filed against him by the Travis County Attorney charged the commission of an offense—enhanced DWLI. His arguments thus must focus on whether the information charged a person. On that topic, he argues that "[p]ersonal jurisdiction *can't* exist until the target is proved to have 'consented' to being regulated, and that in a fiduciary capacity," and that because there was "no viable commercial nexus sounding in trust, i.e., no 'Certificate of Title' trust, there was and is no evidence of fiduciary capacity, for which reason there's no personal jurisdiction." But the information filed against him by the County Attorney indeed charged a person—it named "Wesley Perkins" as the person who had committed the charged offense. *See Jenkins*, 592 S.W.3d at 901. We overrule his first issue.

**II.    The trial court properly denied Perkins's pre-trial plea to the jurisdiction.**

In his second issue, Perkins contends that the trial court erred by denying his pre-trial plea to the jurisdiction because the court lacked subject-matter jurisdiction for this prosecution. He was charged by information in the Travis County County Court at Law No. 8,

which has subject-matter jurisdiction over Class B misdemeanor prosecutions in Travis County. *See* Tex. Const. art. V, § 1; Tex. Gov't Code §§ 25.0003(a), 25.2291(a)(8), 25.2292(n), 26.045(a), (e); Tex. Code Crim. Proc. arts. 4.01(7), 4.07. The information alleged a Class B misdemeanor. The County Court at Law No. 8 thus had subject-matter jurisdiction for this prosecution. *See* Tex. Const. art. V, § 12(b) ("An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. . . . The presentment of an . . . information to a court invests the court with jurisdiction of the cause."); *Trejo v. State*, 280 S.W.3d 258, 260–61 (Tex. Crim. App. 2009); *Kirkpatrick v. State*, 279 S.W.3d 324, 326–29 (Tex. Crim. App. 2009); *Teal v. State*, 230 S.W.3d 172, 181–82 (Tex. Crim. App. 2007).[1] We overrule his second issue.

---

[1] Perkins's arguments to the contrary focus on the State's evidence at trial:

Subject matter jurisdiction *can't* exist unless STATE can actually *prove* 'vehicle,' i.e., that the target has 'consented' to being regulated (and that in a fiduciary capacity). There being no viable commercial nexus sounding in trust, i.e., no 'Certificate of Title' trust, there was and is no evidence of 'consent' as required to prove 'vehicle.' Therefore, there's no subject matter jurisdiction, for which reason it was error to deny Perkins's Plea to the Jurisdiction.

. . . .

. . . *Jurisdiction* isn't established until STATE presents evidence of a case.

(Bolding removed.) This is the wrong focus because the state constitution, *Trejo*, *Kirkpatrick*, and *Teal* all focus on the State's *pleadings* as the material that invests the trial court with subject-matter jurisdiction. The information here invested the trial court with subject-matter jurisdiction by alleging a Class B misdemeanor in Travis County, so the court properly denied Perkins's pre-trial plea to the jurisdiction.

**III.    The evidence was sufficient despite Perkins's arguments about the relevant legal meanings of "vehicle," "transport," "operate," and "drive."**

Liberally construed, Perkins's brief challenges the sufficiency of the evidence to support his conviction. To prove enhanced DWLI, the State needed to prove that he had operated a motor vehicle on a highway while his driver's license was expired, when it had expired while it was suspended, and that he either had been previously convicted of an offense for driving with an invalid license or was operating the motor vehicle here without having established the statutorily required financial responsibility, such as sufficient liability insurance. *See* Tex. Transp. Code §§ 521.457(a)(3), (f)(1)–(2), 601.051, 601.191. Perkins's evidentiary-sufficiency arguments focus on the legal interpretation of the terms "vehicle," "transport," "operate," and "drive," urging that a vehicle is not subject to the traffic laws unless it is engaged in some sort of "commercial" activity. This Court and others have previously considered and rejected such arguments. *See, e.g.*, *Perkins v. Ivey*, 772 F. App'x 245, 246–47 (5th Cir. 2019); *Perkins v. State*, No. 03-19-00356-CR, 2021 WL 2172547, at *6 (Tex. App.—Austin May 28, 2021, no pet.) (mem. op., not designated for publication); *Perkins v. State*, Nos. 03-14-00305-CR – 03-14-00310-CR, 2015 WL 3941572, at *2–3 (Tex. App.—Austin June 25, 2015, pet. denied) (mem. op., not designated for publication), *cert. denied*, 577 U.S. 1065 (2016). The argument fails again here.

The argument is rooted in a misunderstanding of *Lozman v. City of Riviera Beach*, 568 U.S. 115 (2013), in which the Supreme Court of the United States applied federal maritime law to civil claims against a houseboat. But federal maritime law does not supply the legal meaning of "vehicle" to be used in interpreting the statute of Perkins's offense; Texas state law does. *Cf. Ivey*, 772 F. App'x at 246–47. And Texas state law does not require a vehicle to be engaged in any commercial activity to be subject to the statutes creating offenses for

5

vehicle-operators who lack a valid driver's license. *See* Tex. Transp. Code §§ 521.001(b) (applying to statute of Perkins's offense definitions provided for in subtitle that contains Transportation Code section 541.201), 541.201(23) ("'Vehicle' means a device that can be used to transport or draw persons or property on a highway.").

The same is true, under the statute of Perkins's conviction, for "transport," "transported," "transporting," "transportation," and the like. No nexus with commerce is required under the widely understood meaning of "transport" when used in the context of driving a vehicle on a highway. *See Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012) ("Terms not defined in a statute are to be given their plain and ordinary meaning, and words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite."); *Transport*, Black's Law Dictionary (11th ed. 2019) ("transport *vb*. . . . To carry or convey (a thing) from one place to another."). The State presented video and testimonial evidence that Perkins was driving a minivan when he was pulled over. We thus hold that his evidentiary-sufficiency challenge based on requiring a nexus with commerce for the meanings of the terms "vehicle" and "transport" fails.

Perkins's challenges based on "operate" and "drive" are similar—that those terms require a nexus with commerce as well, but they don't. *See* Tex. Transp. Code §§ 521.001(b) (applying to statute of Perkins's offense definitions provided for in subtitle that contains Transportation Code section 541.001), 541.001(1-a) ("'Operator' means, as used in reference to a vehicle, a person who drives or has physical control of a vehicle."). It is widely understood, *see Watson*, 369 S.W.3d at 870, that for a person to drive a car, it does not require the car to then be engaged in commerce for the person to be said to be "driving." We thus hold that Perkins's evidentiary-sufficiency challenge based on the terms "operate" and "drive" fails.

**IV.** **Perkins's complaints about the admissibility of certain evidence either were not preserved or are meritless.**

In his third issue, Perkins contends that the trial court abused its discretion by admitting evidence in three ways. He contends that (1) evidence of his prior offenses or arrests was inadmissible during guilt–innocence, (2) evidence of surcharges imposed on him for prior driving offenses was inadmissible during both guilt–innocence and punishment, and (3) the best-evidence rule prohibited testimony about the tags that Perkins had put on the minivan in lieu of lawful license plates.

As to the first argument, before voir dire on the first day of trial, the trial court granted Perkins's motion *in limine* about any prior offenses other than those alleged in the information as necessary to support a conviction for the Class B misdemeanor. *See* Tex. Transp. Code § 521.457(f) ("An offense under this section is a Class B misdemeanor if it is shown on the trial of the offense that the person" has previously committed either of two kinds of offenses.). The trial court ruled, "[A]ny reference to extraneous offenses apart from that alleged in the Information, I'm going to have—I'm going to deny admission at the guilt–innocence phase, and even at the voir dire phase at this point." But at every point later in the trial when the State or its evidence made any direct or indirect mention of Perkins's prior offenses or arrests, Perkins did not object that evidence of his prior offenses or arrests was inadmissible. He thus forfeited appellate review of this part of his third issue. *See* Tex. R. App. P. 33.1(a)(1) (to be preserved for appellate review, complaints must be made by timely requests, objections, or motions before trial court); *Fuller v. State*, 253 S.W.3d 220, 232–33 (Tex. Crim. App. 2008) ("A motion *in limine*, however, is a preliminary matter and normally preserves nothing for appellate review. For error to be preserved with regard to the subject of a motion *in limine*, an objection must be made at the

7

time the subject is raised during trial. The appellant made no objections to Allen's testimony at trial. As a result, the appellant has waived appellate review of any error associated with Allen's testimony.").

We reach the same result about the surcharges evidence. The record does not reveal any instance in which Perkins objected during guilt–innocence or during punishment that evidence of the surcharges was inadmissible. He thus forfeited this part of his third issue as well.

For the best-evidence complaint about the tags that he put on the minivan in lieu of lawful license plates, the evidence rule at issue provides, "An original writing, recording, or photograph is required in order to *prove its content* unless these rules or other law provides otherwise." Tex. R. Evid. 1002 (emphasis added). The rule does not apply to documents' content that is merely collateral to the case. *See Ali v. State*, 26 S.W.3d 82, 88 (Tex. App.—Waco 2000, no pet.) ("But when the document and its contents are only collaterally related to the issues in the case, the best evidence rule does not apply."); *Shugart v. State*, 32 S.W.3d 355, 361–63 (Tex. App.—Waco 2000, pet. ref'd) (concluding that exclusion of testimony about correspondence was improper under best-evidence rule because rule only applies "when the language of the document itself is important"); *Keaton v. State*, 755 S.W.2d 209, 210–11 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (affirming admission of testimony about extent of city limits over best-evidence objection because "whether the stop was made within the city limits was only a collateral issue").

Perkins lodged his best-evidence objection to this answer by Officer Hallmark: "I saw a Toyota minivan traveling southbound on Manchaca fail[] to signal intent when changing lanes, caught my eye, and when I got behind the minivan I recognized that the license plate that was displayed was not a valid Texas license plate." We conclude that the best-evidence rule does not apply because the *content* of Perkins's tags was merely collateral to the case—whether the tags

8

said this or that did not matter. The officer otherwise testified that he pulled Perkins over not only for these tags but also for not signaling a lane change and having a taillight out. The content of the tags was therefore an issue merely collateral to the trial. We thus hold that the trial court did not abuse its discretion by overruling the best-evidence objection, and we overrule the rest of Perkins's third issue.

**V.  The jurisdictional challenges reasserted during trial were still meritless.**

In his fourth issue, Perkins contends that the trial court erred by denying his jurisdictional challenges when he reasserted them at trial. His arguments here are no different from his arguments under his first and second issues and those for the evidentiary-sufficiency complaints that we have already addressed. We thus overrule his fourth issue.

**VI.  The jurisdictional and evidentiary-sufficiency objections did not prevent submitting this case to the jury.**

In his fifth issue, Perkins contends that the case should not have been submitted to the jury over his jurisdictional and evidentiary-sufficiency objections. The core arguments here are the same as ones that we have already rejected, so we overrule this issue. We note that Perkins asked that sentencing be submitted to the jury.

**VII.  Perkins has not shown that police training materials were material to guilt or punishment, under *Brady*.**

In his sixth issue, Perkins contends that his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were violated because he requested from the prosecution the police department's training materials about "sovereign citizens" but did not receive them. Under *Brady*, a defendant must show that the requested items are "material" to guilt or punishment. *Pena v. State*, 353 S.W.3d 797, 812 (Tex. Crim. App. 2011). To show materiality, "the defendant must

show that, 'in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure.'" *Id.* (quoting *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002)). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Id.* (internal quotation omitted) (quoting *United States v. Agurs*, 427 U.S. 97, 109–10 (1976)).

Perkins has not made the required showing. The evidence showed that Officer Hallmark pulled Perkins over for not signaling a lane change, the broken taillight, and the tags in lieu of lawful license plates. The evidence also showed that Perkins was operating the minivan without a valid driver's license, his license had expired while it was suspended, and he had previously been convicted for driving without a valid license or was operating the minivan here without having established the statutorily required financial responsibility. Nothing in the record shows how either of these factual matters could have been affected by any "sovereign citizen" police training. Perkins offers no argument for why the outcomes of guilt or punishment would have been different had the purported training materials been disclosed to him. We overrule Perkins's sixth issue.

## VIII.   Perkins's *Brady* issue about discovery of his car tags rests on meritless arguments.

In his seventh issue, Perkins contends that the prosecution violated *Brady* by not producing the tags that he had put on the minivan in lieu of lawful license plates. As part of proving a *Brady* claim, a defendant must show "that the evidence withheld by the State was 'favorable' to his case" because, for example, it was either exculpatory or impeachment evidence. *Pena*, 353 S.W.3d at 811–12. Perkins argues that the tags were exculpatory either because they

10

prove that Officer Hallmark did not have probable cause for the traffic stop or because they prove the lack of any "vehicle" or "transportation" here. We have already rejected the arguments about the meanings of "vehicle" and "transportation"—those terms do not require a nexus with commerce, as Perkins claims—and the evidence showed that the traffic stop did not depend solely on the tags because Officer Hallmark testified that he initiated it because of the lack of signaling a lane change and a broken taillight as well. We thus overrule Perkins's seventh issue.

## IX. Perkins's eighth issue presents no error over which to reverse the trial court's judgment.

In his eighth issue, Perkins contends that an appointment of standby counsel was an abuse of discretion. The record suggests that standby counsel was not present during the trial, and Perkins's appellate briefing does not appear to complain about any involvement of standby counsel in this prosecution. During voir dire, the prosecutor told the venire panel: "The defendant is representing himself. He has that right. He also has a standby counsel appointed for him who he has excused for a while who may show up later." Nothing else in the reporter's record suggests that standby counsel was present at trial. Perkins's arguments on appeal appear to accept this when he acknowledges that much of the relief that he desires was already granted to him by standby counsel's absence from trial: "While keeping [standby counsel] away from defense table during trial was a *significant* form of relief, the fact he was appointed, at all, means that the county fisc is still picking up a tab that should never have been opened in the first place." Perkins's eighth issue does not present any purported error requiring correction—he acknowledges that the relief that he sought, that counsel not interfere with his self-representation at trial, was already granted. We overrule his eighth issue.

11

**X.     Perkins's jurisdictional and evidentiary-sufficiency complaints do not make the entire Transportation Code unconstitutional.**

In his ninth issue, Perkins contends that the entire Transportation Code is unconstitutional, for the same commercial-nexus reasons that we have rejected. We overrule his ninth issue.

**CONCLUSION**

We affirm the trial court's judgment.

_____
Chari L. Kelly, Justice

Before Justices Goodwin, Triana, and Kelly

Affirmed

Filed:   March 24, 2022

Do Not Publish