

# NUMBER 13-15-00159-CR

# COURT OF APPEALS

# THIRTEEN DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**LEONARDO VILLARREAL MORENO,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 139th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

A Hidalgo County jury convicted appellant Leonardo Villarreal Moreno of murder, a first-degree felony, and the trial court imposed a punishment of fifty years' imprisonment in the Texas Department of Criminal Justice's Institutional Division. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West, Westlaw through 2015 R.S.). By four issues, which we address as two, Moreno (1) challenges the sufficiency of the evidence supporting his

conviction; and (2) asserts that the trial court reversibly erred by admitting a handgun found at his home into evidence at trial. We affirm.

## I. BACKGROUND

On the night of October 5, 2012, seventeen-year-old Miguel Vasquez Jr. and his childhood friends Ivan Lopez and Steve Aguilar went "for a cruise" in Vasquez's red Pontiac Sunfire to visit some other friends at a house party on South Delia Street in Edinburg. After arriving at the party, Vasquez parked his car along the street. Vasquez and his friends stayed seated inside the Sunfire and chatted with one of the partygoers. A short time later, an unknown silver van performed a U-turn and stopped in the street in front of the party, nearly parallel, but facing the opposite direction of Vasquez's car. Witnesses testified that a male, later identified as Raul Lara, exited the van and became argumentative with the partygoers by exchanging words and telling them to "stop chilling with [his] cousins." After the exchange of words, Lara opened fire on the party with a handgun. Witnesses—many of whom took cover after hearing the first shot—recalled that the shots were fired in two separate sequences. Specifically, witnesses heard four shots, a break, and then an undetermined number of more shots. Several bullets from the gunfire struck Vasquez's car, including one bullet that entered Vasquez's left shoulder, struck his jugular vein, and exited through his right jaw. Vasquez died a short time later at an area hospital.

Through its investigation, Edinburg police identified Eric Atwood as the driver of the silver van, accompanied by his wife Yaritza Tijerina in the front passenger seat, Moreno and Lara in the second passenger row, and Julissa Tijerina, Lucinda Tijerina, and Martin Tijerina in the van's third passenger row.

2

Julissa, who was age seventeen at the time of trial and age fifteen at the time of the incident, testified that she and her cousin Lucinda had been hanging out with friends at the party on South Delia street on the evening of October 5, 2012 when her sister Yaritza called her to tell her that their mother had wanted Julissa and Lucinda to go home. After the call, Julissa and Lucinda walked toward a nearby Burger King where Atwood, Yaritza and the others picked them up in the van. Once in the van, Yaritza demanded that the girls tell her where the party was located. Julissa testified that Atwood eventually located the party in the nearby neighborhood and stopped in the street in front of the house. Julissa testified that at that point, Moreno told the party's attendees from the inside of the van "not to hang out with [Julissa and Lucinda] no more" and then Lara stepped out of the van and began shooting. Julissa further testified that Moreno later began shooting from inside of the van. Julissa told jurors that after the shooting, Atwood drove to Martin's house, and on the way to Martin's house, Moreno and Lara were talking "like normal," "laughing," "celebrating" and telling each other that "it was fun." Julissa recalled that once at Martin's house, Moreno and Lara began picking up bullet casings located inside of the van and placed them in their pant pockets. The group then left Martin's house to drop off Moreno, then Lara, and eventually the remainder of the group ended up at Atwood and Yartiza's home where they stayed for the night.

Lucinda, who is Julissa's cousin and was also fifteen years-old at the time of the incident, testified that she and Julissa were hanging out at the South Delia house party "doing bars,[1]" drinking beer, and smoking weed for two hours, before Yaritza called

---

[1] The record reveals that "bars" is street slang for prescription Xanax pills.

3

Julissa. Lucinda recalled that several of the people at the party began yelling at them and asked them to leave because she and Julissa were minors. She and Julissa left to the nearby Burger King where Atwood, Yaritza, Moreno, Lara, and Martin picked them up. Lucinda told jurors that the van drove by the party on South Delia Street when Lara opened the door to the van and started arguing with partygoers. Lucinda recalled that Lara and Moreno then began shooting at the party. After the shooting, Lara and Moreno were "cheering" and told each other that they had not "done that in a long time." Lucinda stated that the group dropped off Martin, then headed to Moreno's house where they were looking for bullet casings in the van. Lucinda admitted to initially lying to police on Yaritza's advice, by identifying an uninvolved person named "George" as the shooter. Finally, despite being intoxicated that night, Lucinda testified that she remembered "some parts"

Juan Pablo Sosa attended the South Delia Street party on the night of October 5, 2012 and engaged in the argument with Lara. According to Sosa, he recalled that an unidentified person seated behind the driver of the van handed a gun to Lara prior to him opening fire on the party and that "two guys" were involved in the shooting. Sosa further recalled that the gun was wrapped "in a towel or a shirt or something." Another party attendee, Martin Zapata Jr., testified that "somebody handed" Lara a gun before Lara opened fire on the party.

Shortly after the shooting, police attempted to locate Moreno by visiting his mother's home in Pharr. Although Moreno was not home, police obtained consent from Moreno's mother to search the home. During the search, police recovered a nine-millimeter handgun. The trial court admitted a photo of the nine-millimeter pistol that

4

was recovered. Two days after the shooting, Moreno appeared at the Edinburg Police Department and gave a voluntary statement in which he implicated Lara as the sole shooter. Moreno's statement also stated that Lara gave Moreno "another gun that [Lara] had in the side pocket of his pants . . . . [and] . . . told [Moreno] to hold it." Moreno stated that he "knew it was wrong to hold the gun but I was drunk and stupid." Moreno then placed the gun in a drawer in his bedroom. Richard Hitchcox, an expert on firearms from the Texas Department of Public Safety, told jurors that he tested and examined the recovered nine-millimeter pistol. The shell casings recovered from the scene of the party could not have been fired from the nine-millimeter pistol. However, according to Hitchcox, the pistol had been recently fired—although he could not say exactly when—and that if the nine-millimeter pistol had been fired that night from inside of the van, the shell casings would have fallen inside of the van.

After a two-day trial, jurors found Moreno guilty of murder as charged, and the trial court sentenced him to fifty years' imprisonment with the Texas Department of Criminal Justice's Institutional Division. This appeal followed.

## II. SUFFICIENCY CHALLENGE

Moreno's first issue generally challenges the sufficiency of the evidence to support his murder conviction.[2]

---

[2] Moreno's three issues are as follows: (1) the evidence is legally insufficient and [Moreno's] conviction must be reversed and an acquittal entered after eliminating accomplice Julissa Tijerina and Lucinda Tijerina's testimony there is insufficient evidence to convict [Moreno] of murder; (2) the evidence is legally insufficient to support appellant's conviction for murder; and (3) the trial court erred by denying [Moreno's] motion for directed verdict.

5

**A.      Standard of Review**

In reviewing sufficiency of evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). In viewing the evidence in the light most favorable to the verdict, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilt is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768.

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

Under a hypothetically correct jury charge in this case, Moreno is guilty of murder if he intentionally or knowingly caused Vasquez's death. *See* TEX. PENAL CODE ANN. §

6

19.02(b)(1). The trial court's charge in this case allowed the jury to convict Moreno under what is known as "the law of parties." *See id.* § 7.02 (West, Westlaw through 2015 R.S.). Under the law of parties theory of liability, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* In determining whether the accused participated as a party, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994).

**B. Discussion**

Moreno first asserts that his conviction is based on the testimony of Julissa and Lucinda, who were Moreno's accomplices, thus triggering a sufficiency review through the lens of the accomplice witness rule. We disagree.

The accomplice witness rule is a statutorily created rule which states that "a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. art. 38.14 (West, Westlaw through 2015 R.S.). An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. 2007). To be considered an accomplice witness, the witness's participation with the defendant must have involved some affirmative act that promotes

7

the commission of the offense with which the defendant is charged. *Id.* A witness is not an accomplice witness merely because he or she knew of the offense and did not disclose it, or even if he or she concealed it. *Id.* In addition, the witness's mere presence at the scene of the crime does not render that witness an accomplice witness. *Id.* And complicity with an accused in the commission of another offense apart from the charged offense does not make that witness's testimony that of an accomplice witness. *Id.* A State's witness may be an accomplice as a matter of law or a matter of fact. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). A witness who is indicted for the same offense or a lesser-included offense as the accused is an accomplice as a matter of law. *Id.* But if the State dismisses the indictment before the witness testifies, the witness is no longer deemed an accomplice as a matter of law. *Id.* A witness continues to be regarded as an accomplice, however, if the witness agrees to testify against the accused in exchange for the dismissal of the charge. *Id.* When there is doubt as to whether a witness is an accomplice (e.g., the evidence is conflicting), then the trial judge may instruct the jury to determine a witness's status as a fact issue. *Id.* at 439–40. Accordingly, the viability of Moreno's first issue rests upon the threshold issue of whether Julissa and Lucinda were accomplices—either as a matter of law or of fact—to Vasquez's murder. We hold that Julissa and Lucinda were neither type of accomplice.

The record shows that neither witness participated with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *See Druery*, 225 S.W.3d at 498. Furthermore, the evidence shows that Julissa and Lucinda were merely present during the offense, knew about the offense, and initially provided false information to police about it, all of which do not render them accomplices.

*See id.* The record shows a brief exchange between Moreno's counsel and Julissa in which he asks her whether she was granted immunity by "cut[ting] a deal" with the State. The prosecutor objected and stated that no witness in this case was granted immunity and that Julissa was not formally charged in any way related this case. Therefore, we hold that Julissa and Lucinda were neither accomplices as a matter of law or of fact, and we will not review the sufficiency of the evidence through the lens of the accomplice witness rule as Moreno invites us to do. *See Druery*, 225 S.W.3d at 500. Instead, we will proceed with the standard sufficiency review as articulated earlier in this opinion. *See Winfrey*, 393 S.W.3d at 768.

The evidence in this case shows that Julissa and Lucinda each testified that Moreno shot a firearm at the South Delia Street party on October 5, 2013 from inside of the van, after Lara exchanged words with party goers. Although numerous witnesses from the party later identified only Lara as a shooter, many admitted that they ducked and took cover after the first round of shots. Several witnesses recalled two separate sequences of shootings with a break in between the two rounds. Furthermore, Julissa and Lucinda both testified that after the shooting, Moreno and Lara celebrated, showed little remorse, and later concealed bullet shell casings from the interior of Atwood's van. Additionally, Sosa, who attended the party and engaged in the argument with Lara, testified that a passenger in the van, who was seated behind the driver's seat handed a firearm to Lara shortly before Lara opened fire. The evidence revealed that Lara and Moreno were seated in the row of seats directly behind the driver of the van. Zapata, who was also an attendee at the party, testified to witnessing an unknown person hand Lara a gun prior to Lara firing at the party. Finally, Moreno admitted to police that he

9

helped Lara conceal an allegedly unused firearm that Lara gave him immediately after the shooting. Police found a nine-millimeter pistol inside of Moreno's home. Firearms expert Hitchcox testified at trial that although the casings found at the scene of the shooting could not have been fired from the nine-millimeter pistol, his testing showed that the firearm had been recently fired, and if that particular firearm was fired from inside of the van, the shell casings would have fallen to the floor of the van.

Therefore, after viewing all of the evidence in the light most favorable to the verdict and deferring to the jury's credibility and weight determinations, we hold that a rational jury could have found Moreno guilty of murder beyond a reasonable doubt. We overrule Moreno's first issue.

### III. ADMISSIBILITY OF A PHOTOGRAPH OF THE NINE-MILLIMETER HANDGUN

By his second issue, Moreno asserts that the trial court reversibly erred by admitting State's Exhibit 87, a photo of the nine-millimeter handgun police recovered from Moreno's home, into evidence.

### A. Standard of Review

A trial court's decision on whether to admit evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). An abuse of discretion occurs when the trial court acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc). The inquiry on appeal is whether the result was reached in an arbitrary or capricious manner. *Id.* We afford trial courts "great discretion" in its evidentiary decisions because "the trial court judge is in a superior

position to evaluate the impact of the evidence." *Id.* at 378–79.

## B.    Discussion

At trial, Moreno's counsel objected to the admissibility of State's Exhibit 87 by invoking the best evidence rule and arguing that the best evidence would have been the actual weapon itself rather than a photograph of the weapon.[3]   The "best evidence rule" is found in Texas Rule of Evidence 1002, which states:   "An original writing, recording, or photograph is required in order to prove its content unless these rules or other law provides otherwise."   *See* TEX. R. EVID. 1002.

We find Moreno's argument unpersuasive.   Rule 1002 does not prohibit a party from offering a photograph of the original evidence.   Furthermore, Moreno's interpretation of the rule is inconsistent with the underlying purposes of the rule.   The Texas Court of Criminal Appeals outlined four common-law justifications behind Rule 1002:

(1) The nature of documents is often such that the exact words are of more than average importance, particularly in the case of operative or dispositive instruments . . . where a slight variation of words may mean a great difference in rights.

(2) Secondary evidence—whether parol testimony or copies—is susceptible to both human and mechanical error. The rule, therefore, enhances the probability of accuracy.

(3) The rule promotes the prevention of fraud because it allows the parties to examine documents for any defects or alterations, and it dampens any desire to color testimony as to the contents of documents, since any testimony is subject to immediate corroboration.

---

[3] In his briefing on appeal, Moreno advances other theories challenging the admissibility of the photograph under relevancy rules 401 and 403.   *See* TEX. R. EVID. 401, 403.   Because these objections do not comport with the objection made to the trial court, we find these relevancy arguments waived and will not address them.   *See* TEX. R. APP. P. 33.1.   However, we will nevertheless examine admissibility of State's Exhibit 87 against the "best evidence" objection made at trial.

11

(4) The appearance of the original may furnish information as to its authenticity and significance that may be lacking in a copy, such as handwriting, paper and the like.

*Englund v. State*, 946 S.W.2d 64, 67–68 (Tex. Crim. App. 1997) (en banc) (citations and quotations omitted).

In this case the exhibit in question was not a photograph of an original writing, recording, or photograph that would require proof of its contents to trigger the applicability of the rule. Instead, the photograph depicted a nine millimeter firearm that was recovered by police following a search of Moreno's home related to their investigation. Accordingly, we hold that the trial court did not abuse its discretion by admitting State's Exhibit 87. We overrule Moreno's fourth issue.

## IV.   CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
20th day of October, 2016.